## CAMPBELL *v.* MENZE CONSTRUCTION COMPANY

1. EVIDENCE—PERSONAL INJURY—VISUAL AIDS—TRIAL COURT.—DISCRETION.

> The extent to which blackboards, charts, and other visual aids can be used at a trial, when and whether they are to be marked for the record, and the comment to be made by preliminary or final instructions that such visual aids are not evidence rests within the sound discretion of the trial court.

2. NEGLIGENCE — AUTOMOBILE COLLISION — EXTENT OF INJURIES — SIZE OF VERDICT.

> Verdict of $150,000 awarded to dentist injured in automobile collision *held*, not excessive where there was evidence that the dentist was 56 years old, was permanently and totally disabled from the practice of his profession, from which he had had an average income of $20,000 per year, and it was not shown that the verdict was the result of prejudice, sympathy, or other improper influence.

3. SAME — EVIDENCE — EXPERT TESTIMONY — ACCIDENT RECONSTRUCTION EXPERT — MATTER BEYOND COMMON EXPERIENCE.

> Hypothetical question of counsel for plaintiff on cross-examination of defendant's accident reconstruction expert, which summarized all the facts of the case and then asked what a reasonably prudent man would do in such a case, *held*, improper, because the subject of inquiry was causation and not sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 490.
[2] 22 Am Jur 2d, Damages § 89 *et seq.*
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 146 *et seq.*
[4] 7 Am Jur 2d, Automobiles and Highway Traffic § 220.
[5] 53 Am Jur, Trial § 524 *et seq.*

4. SAME — MOTOR VEHICLES — ASSURED CLEAR DISTANCE AHEAD —
REAR-END COLLISION — PRESUMPTION OF NEGLIGENCE.

Instruction to jury that the presumption of negligence under
the assured clear distance statute is not conclusive and that
a sudden emergency, in no way of the driver's making, may
excuse a violation of the assured clear distance rule, which is
to be reasonably construed in unusual circumstances, *held,*
proper (CLS 1961, § 247.402).

5. TRIAL—INSTRUCTIONS TO JURY—REQUESTS TO CHARGE.

Trial judge must guard against one-sided or argumentative
requests to charge and must avoid requested instructions which
assume or take as established those facts which the parties
by their proofs have placed in controversy.

Appeal from Marquette, Davidson (Bernard H.),
J. Submitted Division 3 October 3, 1968, at Mar-
quette. (Docket No. 4,387.) Decided December 31,
1968.

Complaint by Atwood A. Campbell against Menze
Construction Company and Carl P. Menze for dam-
ages resulting from an automobile collision. Ver-
dict and judgment for plaintiff. Defendants appeal.
Affirmed.

*Bridges & Collins,* for plaintiff.

*Waldo A. McCrea,* for defendants.

PHILIP C. ELLIOTT, J. We will consider each of
four alleged errors in turn.

### THE DAMAGES CHART

Plaintiff prepared a chart listing, in enlarged
print, his auto repair costs, medical expenses, wages
lost as a prison dentist and from a part-time dental
practice and the projected future losses of such
income to age 65. The list totaled $182,051.45 and

did not include pain and suffering. Plaintiff's counsel asked to be allowed to use the chart during his opening statement over objection that "this would unduly emphasize these damages" and "it is an attempt to introduce to the jury an exhibit before the exhibit is introduced, before there is evidence to substantiate it." The defendant's objection was overruled with the court's observation, "He could write it on the blackboard if he wanted to   *   *   * I don't think that it is prejudicial by simply using it to show what his claim is." Later, after each listed item of damages had been supported by testimony and bills and receipts were admitted as exhibits, the chart was offered as an exhibit. The court asked defense counsel, "What is your position?" He had no objection if the chart corresponded to a certain memorandum, so the court, having determined that it did correspond (and it is not claimed otherwise on this appeal), said "Very well, then. It may be admitted. I don't think it is really evidence. It's a statement of your claim." Then defense counsel remarked, "As I understand the intention is to use it in argument, perhaps in summation"; to which plaintiff's counsel agreed, "Well, yes, I'm going to use it in my summation   *   *   * along with all the other exhibits." Defendant claims the court erred in admitting the chart. We disagree.

The use of blackboards, charts and other visual aids at a trial is common practice. Counsel for both sides should be encouraged to present their case in a way that will be most clearly understood by the jury. The extent to which visual aids can be used, when and whether they are to be marked for the record and the comment to be made by preliminary or final instructions that such drawings, charts, or calculations are not evidence rests within the sound discretion of the trial court. *Battishill* v. *Humphrey*

(1887), 64 Mich 494; *Billett* v. *Michigan Bonding
and Surety Co.* (1917), 195 Mich 202; *Yates* v. *Wenk*
(1961), 363 Mich 311, 86 ALR2d 242; 53 Am Jur,
Trial, § 490, p 395; § 579, pp 455-457.

## The Size of the Verdict

The jury returned a verdict of $150,000 for plain-
tiff; defendants claim it was excessive. There was
testimony of physical injuries caused by the collision
which disabled plaintiff from the practice of his
profession, dentistry, to the time of trial and evi-
dence that he would never resume his practice. At
age 56 his annual income was nearly $20,000.00 at
the time of his disablement. The verdict was not
shown to be the result of prejudice, sympathy or
other improper influence, and it is not shocking, al-
though it is said to be a county record. *Stevens* v.
*Edward C. Levy Company* (1965), 376 Mich 1.

## An Improper Question

The collision occurred on March 24, 1966 at 1:10
p.m. on highway US 41 near the south limits of
Marquette to which the parties were returning after
lunches at their homes. The day was cold (15°)
and the road was icy and very slippery. Defendant
testified that for half to three-quarters of an hour,
he followed 200 to 300 feet behind plaintiff's car,
which was about the same distance behind a big
truck. He said all three vehicles slowed down to 16
or 17 mph from 21 to 23 mph, and, in his words,
"We kept on going slower as we were running into
these gushes of snow", "as we were going along the
lake, which there is no protection there, each three
vehicles kept on driving in speed and at the same
time getting a little more distance in between",
"when this gush of snow came along a person

could picture a big fog with a little wind and the fog, see, was coming over the big truck and then finally it disappears and then it comes over and came over Dr. Campbell's car and then his car disappeared and then it came to mine and finally it blacked it out." Just before plaintiff's car "disappeared" defendant saw its brake lights go on, "there was first a dim light, then a bright red light". This much of the evidence was summarized in a hypothesis by plaintiff's lawyer during cross-examination of defendant's reconstruction expert, a professor, who was then asked:

*Question (continuing):* "What would a reasonably prudent person do under those circumstances?"

*Defense Counsel:* "Your Honor, I think that is the question which the jury is going to have to answer."

*The Court:* "Well it is. I don't know that he is an expert on this. I'll permit the answer if the professor has one. It is simply his opinion. The jury is not to regard it as more."

This ruling was mistaken; the subject of inquiry is causation and was not sufficiently beyond common experience that the opinion of an expert would assist the trier of fact, and it is doubtful that the witness possessed a special knowledge on that subject. Despite GCR 1963, 605, the question was improper although on cross-examination, and the court erred when the witness was allowed to answer it; *Washburn* v. *Lucas* (1964) 373 Mich 610.

However, the answer was:

*Answer:* "In my opinion the driver under those circumstances should exercise a rather high degree of care."

That answer was not news to a Marquette county jury; it was a truism, comparable to: "driving is

dangerous on a sheet of ice in a blinding snowstorm."
The next few questions were answered, by defendant's expert, as follows:

"* * * We have this type of a situation. He
doesn't know what the first driver did. He doesn't
know what the second driver did. He doesn't know
the rate which either driver is going, nor where
they are on the road at the moment. About the only
thing he can do is slow up his vehicle and try to
stay in the proper position on the road. After all,
he may have something coming behind him and the
vehicle behind him may not be anticipating his stopping * * * a driver under those circumstances
simply has too many unknowns to work with and he
has to use the best judgment that he can in that
situation. Obviously one of the things he should
do is slow up. This becomes a matter of degree, depending upon the visibility which he has. It would
be insufficient to simply slam on the brakes and try
to come to a complete stop, because you may jeopardize somebody elses position * * * Thus he has
to keep moving at reduced speed."

Defendant's testimony was that when plaintiff's
brake lights came on, and then disappeared, he took
his foot off of the gas pedal and slowed and when
plaintiff's car emerged from the snow gusts it was
blocking the road at an angle and his front bumper
hit plaintiff's rear bumper and plaintiff's car went
into a snow bank. The effect of cross-examination
of defendant's expert was to bolster defendant's
theory of the case, and we can imagine the pleasure
with which defense counsel listened to his witness
"bomb" his opponent; naturally, defense counsel did
not interrupt or renew his objection. Therefore we
hold that the ruling of the court was harmless error
that did not affect the substantial rights of the defendants. GCR 1963, 529.1.

The same highway, in the same month a few years before, was the subject of the following description by Justice BLACK:

"The case portrays what few except residents of Michigan's northern peninsula know from experience; that winter transforms what is said to be America's most scenic and naturally attractive waterfront drive—M–28 skirting Lake Superior between Munising and Marquette—into a place of constant danger for the motorist who does not know that, when Hiawatha's 'big sea water' manufactures its own blizzard, the safest way to get through the exposed stretches of the way is to wait for and then 'follow the plow' with its high-borne rotating yellow flasher light. * * *

"The 'attending conditions' were such—this again *is said on favorable view and is not to be taken as standard jury instruction*—as to require motoring due care fitted to such conditions rather than to ordinary motoring conditions as contemplated by the assured-clear-distance statute. The plaintiff driver and the defendant driver, one after the other, entered into the first of several tempest-swept, snow-banked, and substantially visionless passage-ways of M–28 that afternoon in March of 1959. One probably did not know that, when Superior blows by her winter wont directly across the highway where it skirts Murray Bay and Au Train Bay, the weather-wise local motorist usually stays in or heads for less exposed ways. Once he enters such exposed ways, constant risk is his passenger until he emerges at some safe place to stop or turn inland. To stop for want of driving vision or other reason is to invite a collision from the rear. To get out of one's car, the passageway being narrow and the area being a lonely one in winter, is to court personal injury or worse. Requisite vigilance demands that the motorist continue on, fast enough to minimize the danger of collision from the rear and slow enough to minimize the danger of collision with what may

loom ahead. In the tone of Restatement, it isn't possible at all times to obey the letter of the enactment requiring an assured clear distance ahead, and still obey the variable and jury-determinable requirement of due care."

"The investigating and locally experienced State police officer described these weather conditions, relating them to the afternoon of the collision, as 'very hazardous'. The trial judge, in his opinion denying motion for new trial, tells about the 'notorious reputation' of M–28 where it skirts Lake Superior * * *". *Patzer* v. *Bowerman-Halifax Home* (1963), 370 Mich 350 (emphasis added).

## The Patzer Request

Based on the foregoing quotation from the *Patzer Case* and an instruction quoted, but not approved, in the *Patzer Case,* defendants submitted the following instruction, and their final assignment of error is the trial court's refusal to include it in his charge to the jury:

"I instruct you that where an accident occurs under hazardous conditions during a snow storm and while visibility is so poor that to stop on the road or move very slowly is to invite collision from the rear, due care is required fitting such conditions rather than care measured by ordinary motoring conditions as contemplated by the assured clear distance law. Vigilance demands that a motorist must continue on, fast enough to minimize danger of collision from the rear and slow enough to minimize danger of collision with what may loom ahead. Therefore, if you find that such hazardous conditions did exist at the time of this accident, you may find that the statutory presumption of negligence from a rear-end collision was overcome and would not be applicable to determine the negligence of either the plaintiff or defendant.

"If you find that defendant was driving at a reasonable speed and was keeping a proper lookout and because of the conditions over which he had no control which were not foreseeable, such as the sudden blowing of the wind that hid from view the plaintiff's car ahead of him which suddenly slowed down, a thing that could not have been reasonably expected, then there is a situation in which you should apply common sense and judgment in determining whether or not, under all of the circumstances the presumption of negligence should stand or whether or not it has been rebutted."

The trial judge instructed the jury that the presumption of negligence under the rear-end collision statute is not conclusive and may be overcome by other evidence that shows the defendant was not negligent, and he charged the jury fully and correctly that a sudden emergency, in no way of a driver's own making, may excuse a violation of the assured clear distance rule, which is to be reasonably construed in unusual circumstances, and he correctly defined causative negligence and contributory negligence and the burdens of proof. The trial judge correctly refused to give the "patently argumentative and prejudicially categorical" request taken from what was admonished to be "on favorable view and not to be taken as standard jury instruction."

"Trial judges must guard against one-sided or argumentative requests to charge and must avoid requested instructions which assume or take as established those facts which the parties, by their proofs, have placed in controversy." *Washburn* v. *Lucas, supra,* p 620.

We find no error and affirm with costs.

T. G. Kavanagh, P. J., and McGregor, J., concurred.