*In re* BLACKWELL ESTATE

BLACKWELL v SECRETARY OF STATE

1. EVIDENCE—COURT RULES—WITNESSES—EXPERT WITNESSES.

The court rule providing in part that "[t]estimony of expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact", does not alter the well-settled rule that where the jury would be in as good a position as the expert to determine the cause of a particular injury, the expert should not be permitted to express his opinion (GCR 1963, 605).

2. EVIDENCE—DISCRETION—WITNESSES—EXPERT WITNESSES—AUTOMO-BILES—JURY QUESTION.

A trial court did not abuse its discretion in refusing to permit police officers who were experts in automobile accident investigation to express their opinion as to the nature of the object which struck the deceased where there were no facts in evidence which required or were subject to examination and analysis by a competent expert and the requirement that there must be knowledge in a particular area that belongs more to an expert than to the common man was unfulfilled; there was no foundation upon which expertise may function and the police officers had no underlying facts to consider which would remove the question as to what had struck the deceased from the area of knowledge to which the common man, hence the members of the jury, would have access.

3. EVIDENCE—WITNESSES—EXPERT WITNESSES—SPEED.

The opinion of a police officer as to the speed of the object which collided with the decedent based upon the scattering of some

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Expert and Opinion Evidence § 182.
[2] 31 Am Jur 2d, Expert and Opinion Evidence § 146.
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 157.
[4] 29 Am Jur 2d, Evidence § 715.
[5] 53 Am Jur, Trial § 200.
[6] 57 Am Jur 2d, Negligence §§ 301, 363–365.

coins at the scene of the incident did not constitute a sufficient evidentiary basis to make the matter of speed subject to expert analysis; the trial court did not abuse its discretion in refusing to allow the police officer to testify as to his opinion of the speed.

4. EVIDENCE—HEARSAY—EXCITED UTTERANCES—DISCRETION.

The only conditions upon which out-of-court statements will be allowed in evidence as excited utterances are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting, (2) that the statement must have been made before there has been time to contrive and misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it; a trial court did not abuse its discretion in refusing to permit a police officer to testify with respect to the statement of an unidentified person at the scene of an accident that a car had hit the accident victim where such conditions had not been met.

5. TRIAL—ORDINANCES—PLEADING—APPEAL AND ERROR.

A plaintiff who as acquiesced in the jury's consideration of a city ordinance will not be heard to complain, on appeal, that it was error for the trial court to allow the jury to consider the ordinance because it was not pleaded by defendant and was not mentioned in response to plaintiff's interrogatories.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE—PRESUMPTIONS—DUE CARE.

The presumption of due care can be overcome where physical facts in evidence, such as opinion testimony as to point of impact, might demonstrate that the plaintiff's decedent failed to exercise reasonable care; thus, it was not error to submit the question of contributory negligence to the jury where the jury could conclude, on the basis of opinion testimony as to point of impact, that the decedent was guilty of contributory negligence.

Appeal from Wayne, Wade Van Valkenburg, J. Submitted Division 1 June 6, 1973, at Detroit. (Docket No. 13089.) Decided October 31, 1973. Leave to appeal granted, reversed, and remanded, 391 Mich —.

Complaint by Salome Blackwell, administratrix of the estate of Charles Blackwell, deceased, against the Secretary of State as director of the Motor Vehicle Accident Claims Fund for damages

for wrongful death. Judgment for defendant. Plaintiff appeals. Affirmed.

*Dietrich & Shrauger* (by *James A. Tucker*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Joseph B. Bilitzke*, Assistant Attorney General, and *Richard L. Wolk*, Special Assistant Attorney General, for defendant.

Before: BRONSON, P. J., and V. J. BRENNAN and WALSH,* JJ.

WALSH, J. On January 15, 1967, plaintiff's decedent, Charles Blackwell, was found, mortally injured, in the curb lane of Jefferson Avenue in the City of Detroit, near the intersection of Beaufait. Decedent's estate filed a claim against defendant Secretary of State pursuant to the Michigan Motor Vehicle Accident Claims Act, 1965 PA 198; MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.,* claiming that death resulted from the negligence of a hit-and-run driver whose identity was unknown. This application was denied. Consequently, plaintiff estate brought suit against the defendant, in accordance with MCLA 257.1112; MSA 9.2812, to recover damages.

On November 3, 1967, a complaint was filed against defendant, averring that the accident and resulting death of plaintiff's decedent was caused by the negligence of an unknown driver and vehicle which struck decedent. Damages were sought in the amount of $400,000. On December 4, 1967, defendant's answer was filed, containing denials of the averments of negligence and the averments pertaining to the manner of operation of the un-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

known vehicle, as set forth in the complaint. By affirmative defense, defendant alleged that the injuries to plaintiff's decedent were occasioned by his own negligence and/or contributory negligence.

The cause came on for trial in the Wayne County Circuit Court and resulted in a verdict, on August 31, 1971, in favor of defendant of no cause of action. A judgment was entered and filed accordingly on September 21, 1971. Plaintiff's motion for new trial, filed October 14, 1971, asserted error in the following particulars: The refusal of the court to admit res gestae statements by a bystander; prejudicial remarks by defense counsel in final argument; and the refusal of the court to allow opinion evidence by police officer witnesses. By supplement to the motion for new trial, plaintiff averred error in the court's instruction as to contributory negligence of decedent; and in the alleged improper admission of an ordinance of the City of Detroit into evidence. An answer in opposition to the motion for new trial was filed October 21, 1971. An order denying plaintiff's motion for new trial was filed November 22, 1971.

## I

Plaintiff's first allegation of error is that the trial court should have permitted two investigating police officers to express an opinion as to precisely what object collided with the deceased.

At trial, Officer Joseph Bossuyt of the Detroit Police Department testified to the effect that he had been employed as a police officer for more than 24 years and had investigated several hundred accidents. He stated that he investigated the incident involving the deceased, Charles Blackwell. Officer Bossuyt stated that he found debris and pieces of wood from decedent's push cart in the

street. He also found a rubber mark along the curb. However, although he opined that it was a fresh mark, he then said that he could not say how long it had been there. He also gave testimony with respect to the point of impact. Officer Bossuyt stated, however, that at the scene of this incident, he found no evidence attributable to an automobile.

Plaintiff's attorney then put the following question to Officer Bossuyt:

"From the point of where you have established the impact, and from the relation of that tire mark on the curb, in relation to the point that you have established as the point of impact, and eliminating the possibility of other kinds of large objects * * * falling on the decedent. Based on all of those facts, do you have an opinion as to what collided with the decedent?"

Defense counsel immediately objected, stating in part:

"Your Honor, I suggest to you it would just—any juror sitting in this case would be just as capable as the officer in speculating in the manner is called upon. It doesn't require any expertise. These are things which we draw down from common knowledge, but speculating is the wrong kind of evidence in a case such as this."

The trial court sustained defendant's objection.

Officer John Griffin, a Detroit police officer with 23 years of experience, also testified. His testimony was substantially to the same effect as that of Officer Bossuyt. Plaintiff's attorney also asked Officer Griffin for his opinion concerning what had struck the decedent. Defense counsel objected on the same grounds as he had previously and the trial court once again sustained the objection.

GCR 1963, 605 provides:

"Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires. The witness may state his opinion and reasons therefor without first specifying data on which it is based, but upon cross-examination, he may be required to specify such data. The judge, in his discretion, may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded. Testimony of expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

The foregoing court rule, however, does not alter the well-settled rule that where the jury would be in as good a position as the expert to determine the cause of a particular injury, the expert should not be permitted to express his opinion. In 38 ALR2d 13, § 16, p 47, it is stated:

"The opinion of an expert as to the cause of an accident or occurrence is not admissible if the issue upon which it is tendered is of such nature that men of ordinary experience and observation can decide it for themselves on factual evidence."

This subject is also treated rather extensively in 32 CJS, Evidence. In § 546(62), pp 263–264, it is stated:

"An expert witness in a manner discharges the functions of a juror, and his opinion evidence should never be admitted unless it is clear that the jurors themselves are not capable, from want of experience or knowledge of the subject, to draw correct conclusions from the facts proved; in other words, experts may not testify as to matters of common knowledge or experience, and evidence of the opinion of experts is admissible when, and only when, the subject matter of the controversy renders it necessary or proper to resort to opinion evidence."

Also, in 32 CJS, Evidence, § 449, p 85, it is stated:

"The receipt of opinion or conclusion evidence, and the extent to which it will be received in any particular case, are matters resting largely in the discretion of the court."

With the foregoing in mind, we will now examine some of the relevant Michigan authority on this subject. Plaintiff estate cites the case of *Dudek v Popp,* 373 Mich 300; 129 NW2d 393 (1964), for the proposition that the policemen in the instant case should have been allowed to express their opinion as to what collided with the deceased. In *Dudek v Popp, supra,* a police officer was permitted to give his opinion as to the point of impact in an automobile accident. In sanctioning the rendering of such an opinion, the Supreme Court stated:

"Historically, opinion evidence as to cause and effect in areas of ordinary human experience has been barred, on the reasonable assumption that such determination is attainable by the jurors themselves. We note, however, a definitive trend toward the acceptance of police officers with extensive experience in accident investigations as 'experts' and in consequence the allowance (within limits) of their opinion evidence. These opinions have included the point of impact *(Zelayeta v Pacific Greyhound Lines,* 104 Cal App 2d 716 [232 P2d 572 (1951)]), braking and stopping distances *(Kerr v Caraway,* 78 So 2d 571 [Fla, 1955]).

"We align ourselves with the authorities which hold that one properly qualified in accident investigative background may testify either from personal observation or from properly authenticated and admitted exhibits that, in his opinion, certain marks are skid marks and that they were made by a given motor vehicle and his reasons therefor. On the same basis and for the same reasons, he may point out in his opinion the point of impact." 373 Mich 300, 306–307; 129 NW2d 393, 396.

We have no quarrel with the reasoning expressed *supra.* However, in the instant case, the two police officers admitted that there was no objective evidence that would show that an automobile was involved. The only item which they mentioned which might point to such an involvement was the rubber mark which they found on the curb. However, on cross-examination it was admitted that the point in time when said mark became affixed to the curb had not been ascertained.

In *Washburn v Lucas,* 373 Mich 610; 130 NW2d 406 (1964), the Michigan Supreme Court stated:

"For separate reasons, given with detail below, we agree with Mr. Justice O'HARA that we should note from this record what the tenth circuit calls 'a constantly growing tendency in cases of this kind for an investigating officer to assume the prerogative of assessing liability', which 'is the responsibility of the trier of the facts' *(Padgett v Buxton-Smith Mercantile Co,* 262 F2d 39, 42 [CA 10, 1958]). Moreover, we would go further, and commit this Court anew to the established rule that opinions of causation in negligence cases, 'where the subject matter of the inquiry is of such a character that it may be presumed to lie within the ordinary experience of all men of common education' (quotation from American Jurisprudence, as quoted in *Kelso v Independent Tank Co,* 348 P2d 855 [Okla, 1960], more fully quoted and cited *post),* whether offered by experts or lay witnesses, are uniformly excluded as invasive of the province of the jury."

In the case of *Padgett v Buxton-Smith Mercantile Co,* 262 F2d 39 (CA 10, 1958), the United States Court of Appeals ruled that the admission of a highway patrolman's testimony as an expert to the effect that his investigation showed that a particular automobile had left an incriminating skid mark which showed that it was on the wrong

side of the highway was error and prejudicial. The Court stated:

"The rule has been applied in many instances to expert testimony of highway patrolmen who purport to give an opinion concerning the position and identity of vehicles at the point of collision on a highway. See Annotation 23 ALR2d 112; 38 ALR2d 13. These cases have fairly well molded the general rule that testimony as to tire marks on a highway is admissible in civil actions where sufficient foundation therefor is laid by showing 'that the condition of the road was the same as it was at the time of the accident and had not been changed by weather or travel, and there is sufficient identification that the marks were made by the automobile involved in the accident.' Annotation 23 ALR2d 112, 116. Proper foundation having been laid, testimony is not inadmissible simply because the witness did not see the accident. But in most all the cases where skid marks have been held competent evidence to show the location of the vehicle with respect to the center line of the road, the skid marks are directly traceable to the unmoved car. These circumstances, however, do not call for expert testimony. Any layman is able to trace a skid mark to the point of the standing vehicle. No identity of the vehicle is involved. All that is required is a mere tracing of the marks to show the course the vehicle took while making the marks.

"So it is with us. No peculiar skill or knowledge was required to trace the skid marks or to infer therefrom that the car laying them down was at one point slightly on the wrong side of the road, and that a vehicle colliding with it at that point was in its own traffic lane. The identification of these incriminating marks may very well involve scientific skill and knowledge which lie in the realm of expertise. But the expressed opinion of the patrolman here was not based upon any scientific experimentation or knowledge. Instead, it rested upon the simple facts of a collision between the appellees' truck and appellant's car; skid marks at or near that point, indicating that a vehicle crossed the center line; debris at that point, and damage marks on the car's left rear fender and the truck's left front

fender. If this fact situation is sufficient to justify the conclusion that appellant's car left the skid marks, such conclusion is quite as much within the competence of a lay juror as a highway patrolman. The permissible inference does not require any more, if as much professional skill or knowledge, as the advisability of tire chains under the attendant circumstances in *Nelson v Brames, supra* [241 F2d 256 (CA 10, 1957)]; or the excluded conclusion of the highway patrolman concerning 'the assumed pathway of the vehicles subsequent to the accident' in *Grayson v Williams, supra* [256 F2d 63 (CA 10, 1958)].

"The expressed opinion of the highway patrolman did not serve to enlighten the jury in respect to a matter outside its competence and should not have been admitted. While we are loath to interfere with the broad discretion of the trial courts in matters of this kind, the opinion came from an officer of the law whose badge of authority gave it evidential significance which may not be dismissed as harmless or nonprejudicial. As an official opinion of a fact matter within the knowledge or comprehension of the members of a jury it carries a weight which tends to usurp the judicial function. It is indicative, we think, of what appears to be a constantly growing tendency in cases of this kind for an investigating officer to assume the prerogative of assessing liability. This is the responsibility of the trier of the facts." 262 F2d 39, 41–42.

It must be remembered that the trial court in the instant case did not refuse to admit the opinion testimony because it embraced the ultimate issue. Clearly, to have done so would have been error. The reason that the trial court refused to admit the opinion testimony was that the police officers, who had admitted that there was no tangible evidence of the involvement of an automobile in this incident, would merely have been speculating on a matter which was within the province of the jury to decide based upon inferences from the evidence. The point is that the police officers,

though experts in accident investigation, had no underlying facts to consider which would remove the question as to what had struck the deceased from the area of knowledge to which the common man, hence the members of the jury, would have access. The police officers were not medical experts (indeed a physician who had examined the body of the deceased expressed his opinion that an automobile had struck the deceased). To repeat, the police officers may have been experts in accident investigation, but no attempt was made to show that they, in the absence of any evidence (except inferential evidence) of the involvement of an auto, were any more qualified than the members of the jury to opine on that question.

In *Campbell v Menze Construction Co,* 15 Mich App 407; 166 NW2d 624 (1968), this Court in dealing with a claim of error in the admission of some "expert" testimony stated:

"This ruling was mistaken; the subject of inquiry is causation and was not sufficiently beyond common experience that the opinion of an expert would assist the trier of fact, and it is doubtful that the witness possessed a special knowledge on that subject. Despite GCR 1963, 605, the question was improper although on cross-examination, and the court erred when the witness was allowed to answer it; *Washburn v Lucas,* 373 Mich 610; 130 NW2d 406 (1964)." 15 Mich App 407, 411; 166 NW2d 624, 626–627.

The Michigan Supreme Court in the case of *O'Dowd v Linehan,* 385 Mich 491; 189 NW2d 333 (1971) promulgated a three-pronged test with reference to the admissibility of expert testimony. The Court stated:

"1. *There must be an expert.* In the professions and in most scientific disciplines, specific areas of expertise are readily recognized. The test of an expert presents

no difficulty. In other areas, it is quite as easy to recognize that no valid expertise exists. A water dowser who purports to find water with the aid of a willow wand could scarcely qualify as an expert on subterranean waters, while a scientifically trained and experienced student of the subject might do so. A policeman with an eighth grade education who has been on traffic duty for ten years and has investigated innumerable traffic accidents may have limited credentials as a traffic expert, while a laboratory technician, never at the scene of an accident, who has analyzed paint samples taken from cars at the scene may be qualified to testify as to whether the cars came into contact.

"2. *There must be facts in evidence which require or are subject to examination and analysis by a competent expert.* Fingerprints must have been found at the scene of the crime and must also have been taken from the defendant before an expert can present his findings to the jury. The X-ray of plaintiff's chest must be identified as such, also as to the date when taken, etc., before the radiologist can give his reading of it to the jury.

"3. *Finally, there must be knowledge in a particular area that belongs more to an expert than to the common man.* This is the most difficult test of all. The application of it depends upon the relation of expert knowledge to common knowledge at a given time. We need no expert today to tell us that the world is round —or that disease is spread by germs—or that man can travel to the moon. Yet certain experts will be much more capable than the common man of measuring the speed of an oncoming automobile, of calculating the stresses and strains upon a given roof at a given time and in a given place, and of determining the location of a section corner." 385 Mich 491, 509–510; 189 NW2d 333, 342.

In the instant case the second requirement, delineated *supra,* has not been met. As a result of said failure, the third requirement also remains unfulfilled for there is no foundation upon which expertise may function.

Therefore, we conclude that the trial court did

not abuse its discretion in refusing to permit the police officers to express their opinion as to the nature of the object which struck the deceased.

## II

Plaintiff estate's next allegation of error is that the trial court abused its discretion in excluding the opinion testimony of a police officer as to the speed of the object which collided with the decedent.

Officer William Laskey, employed for 15 years with the Detroit Police Department, received a run to the accident in question and proceeded to the scene. The body of decedent was found in the curb lane, close to the curb. He testified that decedent's arms and legs were fractured and that it was "just a mass we picked up. There wasn't much more." The following colloquy then occurred:

"*Q.* From the crushing injuries you described, and from the other physical facts that you were able to observe at the scene, before you rushed him to the hospital, and I understand that was your primary concern, do you have an opinion as to how fast the object was going at the time it collided with the decedent?

"*Mr. Wolk [defense counsel]:* I am going to object for the same reason I previously objected to the other officer giving this type of testimony. There is no foundation laid at all for it.

\* \* \*

"*Q.* Do you have an opinion as to the speed of whatever kind of object struck and killed the decedent?

"*A.* Yes.

"*Q.* Now, on what do you base that opinion?

"*A.* I have had approximately six months with the Accident Bureau in my career as a police officer, and plus all the accidents I have investigated, pedestrian and automobile.

*"The Court:* That doesn't quite answer the question. He asked on what basis you base your opinion.

*"A.* From the location of the pushcart, the location of Mr. Blackwell and the coins he had in his pocket, he had sold the merchandise, I think for a quarter or fifty cents, and the way that was all over the street, the location of the coins. That would give an impact, and the body would be further up front."

A similar question as to speed was asked of the officer, and objection to the question was registered. Objection to such inquiry was sustained on the ground that the answer be "speculative at best".

Plaintiff contends that GCR 1963, 605 does away with the foundation requirement for expert testimony as it pertains to facts upon which such testimony is based; that it is incumbent upon opposing counsel to challenge the factual basis on cross-examination; and that shortcomings in this regard go to weight rather than admissibility of the testimony.

Defendant notes that it is within the province of the trial court to determine the qualifications of expert witnesses to testify; and that expert testimony as to speed is generally admissible where based upon reliable scientific determination thereof.

The chief data upon which Officer Laskey based his opinion was the position of some coins after impact. The trial judge in refusing to allow Officer Laskey to state his opinion ruled:

"As I analyze that, the only evidence he has, of course, is about the coins that were scattered around. Whether or not any person can tell the speed of an object by virtue of the scattering of the coins, that is what he hangs the man's hat on.

"Well, it is speculative at best. I think I will sustain the objection."

We believe that this question also fails to pass the second requirement delineated in *O'Dowd v Linehan, supra,* namely that there be facts in evidence which are subject to examination and analysis by an expert. The trial court ruled that an opinion based upon the scattering of some coins at the scene of this incident did not constitute a sufficient evidentiary basis to make the matter of speed subject to expert analysis. We agree.

In a similar case the Court of Civil Appeals of Texas in *Union Bus Lines v Moulder,* 180 SW2d 509, 510–511 (1944), stated:

"We are further of the opinion that the trial court erred in permitting the witness, Frank Probst, to express his opinion as to the speed of the bus at the time of the collision by stating an estimate in miles per hour. Probst arrived at the scene of the collision about thirty minutes after it had taken place. His estimate that the bus was travelling at the rate of fifty miles per hour was not based upon the nature or length of skid marks, since there apparently were none (according to this witness's observation) but was predicated solely upon the damaged condition of the vehicles after collision, as well as their respective positions on or near the highway after impact had occurred.

"The trial judge held that Probst had qualified as an expert. The bases of his qualifications were that he had observed numerous automobile wrecks and had attended a school for highway patrolmen and peace officers at Austin, at which instruction was given with reference to estimating the speed of vehicles from skid marks and apparent force of impact.

"It is well settled that evidence of violence and force of impact is a circumstance which may be considered by the jury in considering the question of whether or not a vehicle was travelling at an excessive or negligent rate of speed. 9 Blashfield's Cyclopedia of Automobile Law

and Practice (Perm Ed), pt 2, § 6234, p 696. The same authority however states that a non-expert witness' estimate of speed, based solely upon an opinion of the force of an impact, should not be admitted. 9 Blashfield Cyc of Auto Law and Practice (Perm Ed), pt 2, § 6232, p 692. It is further a well-recognized principle that expert opinion testimony is not competent unless it relates to a matter concerning which the expert is shown to have knowledge superior to that possessed by the ordinary juror. The record here fails to show that Probst employed any technical or scientific methods in arriving at his estimate of the speed of the bus in terms of miles per hour. He did not attempt to detail instructions or tests suggested to him at the school in Austin which would enable him to estimate the speed of a vehicle by observation of damage caused by impact."

The Court reversed on this ground.

We find no error in the trial court's refusal to allow Officer Laskey to express an opinion as to the speed of the object which collided with the decedent.

### III

Plaintiff estate next contends that the trial court committed reversible error in refusing to allow a police officer to repeat a hearsay declaration, made by an unidentified person, to the effect that an automobile had struck the decedent.

Witness Edward Hoscilla, a patrolman with the Detroit Police Department, testified as to his presence on the scene as follows:

"*A.* Me and my partner were just driving down, going east on East Jefferson. There was some people out there screaming and yelling at us, and we seen the white pushcart that is usually out there by the gentleman that usually sells red hots to people coming out of the bar.

* * *

"*Q.* You say you were first, your attention was first called to this accident by some people screaming and yelling?

"*A.* Yes.

"*Q.* What did you do at that time?

"*A.* We were looking to see what they were yelling about, and we seen the pushcart turned over on the side of the curb, right near up there. I guess it was near the viaduct or bridge over railroad tracks, and we pulled to the curb, and I didn't see the body at first. Somebody was saying, a car just hit—

"*Mr. Wolk:* I object to anything somebody was saying."

The court sustained the objection over the argument of plaintiff's counsel that the testimony was admissible as an excited utterance, an exception to the hearsay rule. A separate record was made, however, wherein the witness, Officer Hoscilla, testified that "someone was saying at the time, the car had just hit him, went down Jefferson, didn't stop, and like I say, there was probably half a dozen people there, anyway, and somebody was saying the guy pushing it was laying further up on the street, and I felt that was more important than worrying about what hit him right now, and that is when we went up to see the body". He testified that he arrived on the scene "just a few seconds" after the accident, perhaps a minute at most.

The following colloquy also took place between Officer Hoscilla and defense counsel:

"*Q.* Do you know the identity of the person who is alleged to have made the statement to you?

"*A.* No, no.

"*Q.* Did you ask—do you know whether these persons

who made the statement remained or left the scene of the accident?

"*A.* I have no idea.

"*Q.* Did you ever try to ascertain his identity?

"*A.* No, I didn't.

"*Q.* You did not?

"*A.* No.

"*Q.* Can you tell me the precise words—was it one individual or more than one individual?

"*A.* Seems to me it was a man that said it.

"*Q.* A man?

"*A.* Yes, a man.

"*Q.* Was he a black man or a white man?

"*A.* A colored man.

"*Q.* Do you remember where he was when he said it to you?

"*A.* He was near the pushcart when—

"*Q.* Did he come up to the police car?

"*A.* No, I think we were getting out of the car. 'The car just hit him, and went down Jefferson.' Whether he mentioned a light blue, that rings a bell, something about a light blue car hit him.

"*Q.* Did he say he saw it or didn't he mention anything about that?

"*A.* He didn't say whether he saw it or not.

"*Q.* He didn't say whether he saw it?

"*A.* No.

"*Q.* Did he tell you where he learned about this?

"*A.* No.

"*Q.* He may have heard it from somebody else?

"*A.* Possibility, right. Somebody else could have told him.

"*Q.* Somebody else could have told him?

"*A.* Right."

In *Rogers v Saginaw-B C R Co,* 187 Mich 490; 153 NW 784 (1915), the Michigan Supreme Court set forth three requirements which must be met in order that out-of-court statements of this nature might be received in evidence. The Court stated:

"It is well established by the authorities that the only conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it. 3 Wigmore on Evidence, § 1750 *et seq.* " 187 Mich 490, 494.

Professor McCormick in his treatise, Handbook of the Law of Evidence (2d ed), § 297, pp 708–709, states:

"Must the declarant meet the tests of competency for a witness? In a modified manner the requirement that a witness have had an opportunity to observe that to which he testifies is applied. Direct proof is not necessary; if the circumstances appear consistent with opportunity by the declarant, this is sufficient. If there is doubt the question is for the jury. Especially in cases where the declaration is of low probative value, however, it is usually held inadmissible if there is no reasonable suggestion that the declarant had an opportunity to observe."

The California Court of Appeals, in a case with a remarkably similar fact pattern, ruled against admitting such a hearsay statement. In *Ungefug v D'Ambrosia,* 250 Cal App 2d 61; 58 Cal Rptr 223 (1967), the Court was faced with a situation wherein an ambulance driver was permitted to repeat the statement of an unidentified person that another car had struck the decedent. The Court of Appeals ruled the admission of this testimony to be reversible error. The Court stated:

"In the instant case, defendant failed to show except by the remotest inference, conjecture or speculation that the one who made the statement saw the accident.

There is no evidence that there were eyewitnesses to the accident or that there were others in the immediate vicinity of the scene of its occurrence. Not only was the declarant unidentified, there was no evidence that the ambulance driver even saw him or her. Declarant may have been merely repeating what others, including defendant, might have said. Moreover, the 'excitement' which prevailed at the scene when the ambulance arrived may have been engendered by people seeing the decedent lying on the pavement rather than from having observed the accident. (See *Potter v Baker, supra* [162 Ohio St 488; 124 NE2d 140; 53 ALR2d 1234 (1955)].) In our opinion the inference, if any, that the declarant actually witnessed the accident is not persuasive in the instant case. It was therefore error to admit the testimony of the ambulance driver that he heard someone in the crowd say that another car struck decedent." 250 Cal App 61, 68; 58 Cal Rptr 223, 228.

The rationale expressed by the California court is equally apropos in the instant case. The trial court did not abuse its discretion in refusing to permit the police officer to testify with respect to the statement of this unidentified person.

## IV

Plaintiff estate next contends that the trial court erred in agreeing to allow the jury to consider a City of Detroit ordinance which defendant had failed to plead in conjunction with its asserted affirmative defense of contributory negligence. Defendant filed a general contributory negligence defense, but in response to plaintiff's interrogatories cited:

"Failure of plaintiff's decedent to have proper lights on his vehicle, and all of which was the proximate cause of his injuries and consequent death."

For the first time, at trial, defendant, in arguing

for a directed verdict as to the alleged contributory negligence, quoted the language of section 43-1-10 of the Detroit Municipal Code which reads in relevant part:

"Street vendors utilizing vehicles in conducting business on any street in the city shall operate at all times in such a manner so as not to interfere with pedestrian or vehicular traffic and shall keep their vehicles in motion, other than while making sales * * * ."

Plaintiff claims unfair surprise because this ordinance was not pleaded by defendant and was not mentioned in response to plaintiff's interrogatories. Plaintiff contends that it was therefore error for the trial court to allow the jury to consider this ordinance.

This stance, taken by plaintiff estate on appeal, is inconsistent with its position below. In arguing against defendant's motion for a directed verdict, plaintiff's attorney stated:

"Now, at the last second he comes up with an off-the-wall quote from an ordinance that doesn't really determine the question anyway. The jury may consider that certainly. We don't have any objection to their considering. But he didn't plead it and he should not now be allowed to introduce proofs on it. And finally, there has been no testimony elicited by Mr. Wolk to show that in fact the plaintiff was 18 feet out into the street. If anything, that is speculation by one police officer and the rest of the police officers have different opinion as to the point of impact. And all of those things certainly have to be considered by the jury. And as a matter of law, this court cannot say that the decedent was contributorily negligent. A showing of a ordinance violation and if he can show it, and we contend that he cannot, is merely to be considered by the jury. Certainly isn't determinative and certainly isn't negligence per se and can't be considered legally to preclude the

decedent from recovery and again we would respectfully request that his request be denied."

Defense counsel did not introduce any proofs with respect to a possible violation of this ordinance by plaintiff's decedent. However, the inference could have been drawn by virtue of the testimony of one of plaintiff's witnesses, Officer John Griffin, to the effect that, in his opinion, the point of impact was anywhere from 10 to 18 feet from the curb.

In short, plaintiff may have been surprised by defendant's reference to this ordinance, yet plaintiff's attorney informed the court that he had no objection to the consideration of it by the jury, so long as defendant was not allowed to introduce any proofs on it. Indeed, when the court later proposed to read the ordinance to the jury in the course of its instructions, plaintiff's attorney stated:

"I think the court is correct in taking the fair approach to it."

Plaintiff having acquiesced in the jury's consideration of this ordinance, it will not now be heard to complain of error in this regard.

## V

Lastly, plaintiff estate contends that the trial court committed reversible error in allowing the defense of contributory negligence to go to the jury.

The simple answer to this question is that plaintiff did not move for a directed verdict on defendant's asserted affirmative defense of contributory negligence. On the contrary, plaintiff's attorney, in merely responding to defendant's motion for di-

rected verdict, took the position that the question of contributory negligence was one for the jury to decide. We agree.

Furthermore, one of plaintiff's own witnesses, Officer John Griffin, opined that the point of impact occurred at a distance of from 10 to 18 feet away from the curb. If this was the case, the jury could conclude that the decedent was guilty of contributory negligence (see Detroit Municipal Code, § 43-1-10, *supra*). In 9 Callaghan's Michigan Pleading & Practice (2d ed), § 65.92a, pp 364–365, it is stated:

"A verdict is properly directed in favor of a plaintiff where he has made a prima facie case, disclosing his own freedom from contributory negligence and the existence of negligence on the part of the defendant which proximately caused the accident and the injuries complained of, and the case so made is undisputed, thereby leaving to the jury the question of damages only, or where the plaintiff's freedom from contributory negligence is undisputed and defendant is guilty of negligence as a matter of law."

Even if plaintiff had properly moved for a directed verdict as to defendant's affirmative defense of contributory negligence, it would have been appropriate to deny said motion in light of Officer Griffin's testimony. The presumption of due care can be overcome where physical facts in evidence (opinion testimony as to point of impact) might demonstrate that the plaintiff's decedent failed to exercise reasonable care.

Thus, it was not error to submit the question of contributory negligence to the jury.

Affirmed.

All concurred.