*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF WILLIAM D. XERRI, by BRENT
W. XERRI, Personal Representative,

UNPUBLISHED
July 25, 2019

Plaintiff-Appellant,

v

No. 341598
Monroe Circuit Court
LC No. 15-138410-NI

PATRICK ANTHONY WILLIAMS and
STEVENS DISPOSAL AND RECYCLING
SERVICE, INC.,

Defendants-Appellees.

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Plaintiff, the Estate of William D. Xerri, by its personal representative, Brent W. Xerri,[1] appeals as of right a judgment awarding no damages to plaintiff. This matter is a wrongful-death action arising out of a motor vehicle accident. A jury determined that plaintiff's decedent was 60% at fault in the accident and that defendants, Patrick Anthony Williams ("Williams") and Stevens Disposal and Recycling Service, Inc. ("Stevens"), were collectively 40% at fault. Consequently, MCL 500.3135(2)(b) precluded the assessment of damages in favor of plaintiff. We affirm.

## I. BACKGROUND

The fatal motor vehicle accident that gave rise to this matter occurred on December 20, 2013, at the intersection of North Telegraph Road ("Telegraph") and Mall Road ("Mall") in Frenchtown Township, Monroe County, Michigan. Telegraph is a five-lane road at this intersection, with two lanes for northbound travel, two lanes for southbound travel, and a center

---

[1] We will refer to the Estate of William D. Xerri as "plaintiff." William D. Xerri himself will be referred to as "decedent" or "plaintiff's decedent." Brent W. Xerri will be referred to as "Brent."

turn lane. The speed limit in this area is 55 miles an hour. Plaintiff's decedent, who was 70 years old and whose right leg had previously been amputated in 2010 due to blood clots and infections, was operating a 2010 Ford Taurus southbound on Telegraph, north of the intersection with Mall. Williams was operating a garbage truck owned by his employer, Stevens, northbound on Telegraph, south of the intersection with Mall. The collision between decedent's vehicle and Williams's vehicle occurred at the intersection as decedent attempted to drive through the intersection and Williams attempted to turn left onto Mall. Decedent suffered fatal injuries in the accident.

Decedent's son, Brent, acting as the personal representative of decedent's estate, filed this wrongful-death action alleging negligence against Williams and Stevens, including for failing to yield to oncoming traffic. Among other matters, there was some dispute at trial as to the status of the traffic lights at the intersection immediately before the accident occurred. The case proceeded to a five-day jury trial. As noted, the jury found that plaintiff's decedent was 60% at fault in the accident and that defendants collectively were 40% at fault in the accident. The trial court thus entered a judgment that awarded no damages to plaintiff. Plaintiff then commenced the instant appeal, largely challenging various evidentiary decisions by the trial court.

## II. STANDARD OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010) (citation omitted). The trial court's decision whether to permit a party to use a demonstrative or visual aid is also reviewed for an abuse of discretion. See *Campbell v Menze Constr Co*, 15 Mich App 407, 409; 166 NW2d 624 (1968). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). "The decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion." *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 87; 910 NW2d 691 (2017) (quotation marks and citation omitted). "We review de novo questions of law underlying evidentiary rulings, including the interpretation of statutes and court rules. The admission or exclusion of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (footnotes and internal citations omitted). "With this said, an evidentiary error is not ordinarily grounds for appellate relief, and such relief is appropriate only when the error results in substantial prejudice that denies a fair trial to the aggrieved party." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 157-158; 908 NW2d 319 (2017), citing MCR 2.613(A).[2]

---

[2] MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for

## III.  EVIDENCE OF DRUG TEST

Plaintiff first argues that the trial court abused its discretion by excluding evidence of an April 29, 2014 drug test in which Williams tested positive for amphetamines.  We disagree.

Initially, although plaintiff argues that an evidentiary error occurred, plaintiff fails to present an argument addressing whether or how the alleged error resulted in substantial prejudice that denied plaintiff a fair trial.  A party cannot leave it to this Court to make arguments for that party.  *Seifeddine v Jaber*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343411) (slip op at 3-4).  Failure to adequately brief an issue constitutes abandonment.  *Id*.  Plaintiff fails to make an argument addressing whether or how the alleged evidentiary error resulted in substantial prejudice that denied plaintiff a fair trial.  Because plaintiff is not entitled to relief in the absence of prejudice, plaintiff has abandoned the issue.

In any event, the trial court did not abuse its discretion in excluding evidence regarding the drug test.  "Under Michigan's rules of evidence, all logically relevant evidence is admissible at trial, except as otherwise prohibited by the state or federal constitutions or other court rules." *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003), citing MRE 402.  "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence."  *Lewis*, 258 Mich App at 199, citing MRE 401.  Further, "[t]he trial court has discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence."  *Lewis*, 258 Mich App at 199, citing MRE 403.

We find plaintiff's argument regarding the relevance of the drug test difficult to follow, but apparently plaintiff believes it would cast light on Williams's habitual use or nonuse of amphetamines.  However, the primary issue at trial was who had been negligent in the December 20, 2013 motor vehicle accident.  Plaintiff claimed that Williams was negligent in turning left at the intersection, whereas defendants' position was that Williams had the right-of-way when he turned left.  It was undisputed at trial that Williams tested positive for amphetamines on the date of the accident.  There was, however, no evidence that Williams was *impaired* at the time of the accident, and two witnesses who talked to Williams at the accident scene testified that he did not seem impaired.  The fact that Williams tested positive for amphetamines again four months after the accident does not help establish whether Williams was *impaired* at the time of the accident.  Because it is undisputed that Williams had amphetamines in his body on the date of the accident, the fact that he tested positive again four months later was simply irrelevant.  There was no evidence connecting any habitual drug use to Williams's decision to turn left, particularly given the lack of evidence that Williams was impaired at the time of the accident.

---

vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

Plaintiff also contends that evidence of the April 29, 2014 drug test was relevant to challenge Williams's credibility, because there was some suspicion that Williams had tried to cheat the test. Evidence regarding a witness's credibility is always relevant. *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). However, a trial court has discretion in determining the extent to which credibility may be challenged. See generally *Murphy v Muskegon Co*, 162 Mich App 609, 619; 413 NW2d 73 (1987) ("The extent to which a witness may be cross-examined on questions affecting his or her credibility rests in the sound discretion of the trial court."). Evidence regarding any allegedly suspicious circumstances related to the April 29, 2014 drug test could reasonably be viewed as unduly prejudicial as well as cumulative. The trial court allowed plaintiff to present evidence regarding a January 14, 2014 drug test result indicating that Williams's urine sample was diluted. Plaintiff's counsel cross-examined Williams at trial about the diluted sample obtained in the January 14, 2014 test. Plaintiff thus had an opportunity to present a theory that Williams was less than truthful or candid in connection with the drug testing procedures.

Overall, the trial court's decision to exclude evidence regarding the April 29, 2014 drug test fell within the range of reasonable and principled outcomes. Even if the trial court had erred in excluding this evidence, the error did not cause substantial prejudice that denied plaintiff a fair trial. See *Mitchell*, 321 Mich App at 157-158. It was undisputed at trial that Williams had amphetamines in his system on the date of the accident. The jury considered this fact along with the other evidence and concluded that plaintiff's decedent was 60% at fault in the accident and that Williams and Stevens collectively were 40% at fault. Evidence that Williams tested positive for amphetamines again *more than four months after the accident* would not have altered the outcome.

## IV. EVIDENCE OF DEFENSE COUNSEL'S LETTER

Plaintiff next argues that the trial court abused its discretion in excluding an April 23, 2014 letter from defense counsel to the Monroe County Sheriff's Department. We disagree.

Again, plaintiff has abandoned this issue in multiple ways. Plaintiff cites no authority in support of its argument on this issue other than MRE 801(d)(2)(C), which provides that a statement is not hearsay if it is offered against a party and is "a statement by a person authorized by the party to make a statement concerning the subject[.]" However, the trial court excluded the April 23, 2014 letter on the grounds that it was irrelevant and would be unduly prejudicial and confusing to the jury, not on hearsay grounds. Therefore, plaintiff has failed to cite any pertinent legal authority and has thus abandoned this issue. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). In addition, plaintiff again fails to address whether or how the alleged evidentiary error resulted in substantial prejudice that denied plaintiff a fair trial. See *Mitchell*, 321 Mich App at 157-158. Plaintiff has thus failed to adequately brief the issue, which again constitutes abandonment. *Seifeddine*, ___ Mich App at ___ (slip op at 3-4).

In any event, the trial court's determination that this letter was not relevant fell within the range of reasonable and principled outcomes. In the April 23, 2014 letter to the Monroe County Sheriff's Department reflects purported medical and pharmacological research conducted by defense counsel to support the conclusion that Williams's legal use of over-the-counter medicine could have created a false positive result for amphetamines. It was undisputed at trial that

-4-

Williams tested positive for amphetamines on the accident date, and the defense did not present any theory at trial that Williams's test result was a false positive. Defense counsel's assertions in the letter do not tend to make any material fact more probable or less probable. Further, the trial court reasonably concluded that admission of this letter would unduly confuse the jury, given that the letter could incorrectly be viewed as reflecting defense counsel's expertise about the medical or pharmacological research that defense counsel said he conducted.

However, even if the trial court had erred in excluding defense counsel's letter, the error did not cause substantial prejudice that denied plaintiff a fair trial. See *Mitchell*, 321 Mich App at 157-158. Although the letter was not admitted at trial, the key information contained in the letter was made known to the jury through Williams's testimony. Williams admitted at trial that he told the general manager of Stevens that Williams was taking a medicine that Williams thought could have caused the positive drug test. Williams admitted at trial that he is now aware that two toxicologists have indicated that the medicine would not cause a positive test for amphetamines. The jury was thus made aware that Williams had once suggested that the medicine could result in a false positive test result, and it was also made aware that the medicine actually would not cause a false positive. The jury nonetheless determined that Williams was less than 50% at fault in the accident. There is no reason to believe that admission of the letter would have changed the outcome of the trial.

## V. DEMONSTRATIVE AID

Plaintiff next argues that the trial court abused its discretion in refusing to allow plaintiff to use, as a demonstrative aid at trial, an animated video purportedly depicting the motor vehicle accident in this case. We disagree.

Once more, plaintiff has abandoned this issue. Plaintiff argues that the trial court erred in precluding the use of an animated video as a demonstrative aid, but plaintiff does not explain how the failure to grant a new trial on the basis of this purported error would be "inconsistent with substantial justice." MCR 2.613(A); *Mitchell*, 321 Mich App at 157-158. That same standard applies by analogy to an asserted error in the refusal to allow the use of a demonstrative aid. Because plaintiff has failed to address whether the alleged error resulted in substantial prejudice that denied plaintiff a fair trial, plaintiff has failed to adequately brief the issue, and the issue is thus abandoned. *Seifeddine*, ___ Mich App at ___ (slip op at 3-4).

In any event, trial courts possess inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). Further, trial courts "have express authority to direct and control the proceedings before them." *Id*. See also *People v Johnson*, 315 Mich App 163, 177; 889 NW2d 513 (2016). "The authority and discretion afforded to trial courts to control the course of trial is, in fact, very broad." *Id*. In particular, trial courts are vested with discretion in determining the extent to which demonstrative or visual aids may be used. See *Campbell*, 15 Mich App at 409.

> The use of blackboards, charts and other visual aids at a trial is common practice. Counsel for both sides should be encouraged to present their case in a way that will be most clearly understood by the jury. The extent to which visual

aids can be used, when and whether they are to be marked for the record and the comment to be made by preliminary or final instructions that such drawings, charts, or calculations are not evidence rests within the sound discretion of the trial court. [*Id.*]

In *Campbell*, this Court upheld the trial court's decision regarding the use of the visual aid of a chart listing the damages that the plaintiff claimed to have suffered. See *id.* at 408-409.

The trial court's declination to allow the use of an animated video as a demonstrative aid did not fall outside the range of reasonable and principled outcomes. Plaintiff argues that the video would have helped the jury understand the locations of the vehicles and the rapid timing of events before the accident. However, three eyewitnesses testified regarding the events surrounding the accident. The trial court correctly observed that the testimony was sufficiently clear and that there was no technical issue involved that required the use of a demonstrative aid. The jury heard the testimony of the eyewitnesses and did not need an animated video to understand what occurred. The trial court thus did not abuse its discretion in disallowing the use of this video.[3]

Furthermore, even if the trial court had erred in barring the use of this video as a demonstrative aid, such an error did not result in substantial prejudice that denied plaintiff a fair trial. See *Mitchell*, 321 Mich App at 157-158; see also MCR 2.613(A). Again, the jury heard the testimony of the eyewitnesses to the accident. There is no reason to believe that an animated video purporting to depict what the eyewitnesses clearly described would have altered the outcome of the trial.

## VI. DECEDENT'S MOTOR VEHICLE HAND CONTROLS

Plaintiff next argues that the trial court abused its discretion in admitting evidence that some of decedent's family members recommended that he obtain hand controls for his motor vehicle. We disagree.

As with previous issues, plaintiff once again fails to present an argument addressing whether or how the alleged evidentiary error resulted in substantial prejudice that denied plaintiff a fair trial. See *Mitchell*, 321 Mich App at 157-158. Plaintiff has thus failed to adequately brief the issue, which again constitutes abandonment. *Seifeddine*, ___ Mich App at ___ (slip op at 3-4).

In any event, "Michigan follows the rule of comparative negligence." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 523; 629 NW2d 384 (2001). "Under this doctrine, a defendant may

---

[3] The trial court also took note of the failure of plaintiff's counsel to disclose the video to the trial court and defense counsel until the second day of trial. Plaintiff argues that it was not required to disclose the video earlier. However, the tardy disclosure does not seem to have been the central basis of the trial court's decision. Rather, the trial court's rationale was that the video was not needed as a demonstrative aid given the clear testimony and the lack of a technical issue.

present evidence of a plaintiff's negligence in order to reduce liability." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 98; 485 NW2d 676 (1992). MCL 600.2957(1) provides, "In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated . . . in direct proportion to the person's percentage of fault." In cases involving motor vehicle accidents, damages may "not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(2)(b).

Some of decedent's family members testified about their observations of how decedent drove his vehicle following the amputation of his right leg. Decedent sat awkwardly in his vehicle in order to use his left foot to apply the brake and the gas pedal. Decedent's family members testified about their concerns and their suggestions to decedent that he obtain hand controls for his vehicle. Plaintiff argues this testimony should not have been admitted because there is no evidence that decedent's failure to obtain and use hand controls caused the accident. However, there was undisputed evidence at trial that decedent failed to apply his brakes before the accident, even though another driver going the same direction as decedent and who was further ahead of decedent stopped at the intersection as the light was changing. The testimony of decedent's family members regarding their observations of his driving and their concerns about how he drove, which were intertwined with their recommendations to him to get hand controls, offers a possible explanation for why decedent's left foot failed to hit the brake pedal. The trial court's decision to admit the evidence fell within the range of reasonable and principled outcomes.

## VII. OTHER ARGUMENTS

Plaintiff's final two arguments on appeal concern a challenge to another evidentiary ruling and an assertion of instructional error. Irrespective of the substantive merits of plaintiff's final two arguments, the evidence and instruction involved in those issues pertain only to damages. The jury found that decedent was 60% at fault in the accident and thus did not address or award damages. As discussed, MCL 500.3135(2)(b) therefore precludes an assessment of damages in plaintiff's favor. Even if we were to conclude that plaintiff's arguments entirely correct and that the trial court erred, we could not enter an order on that basis granting plaintiff relief from the outcome of the proceedings, because they pertain to damages that were totally unavailable in any event. Thus, these arguments are moot. See *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 406; 834 NW2d 878 (2013). We generally need not, and do not, consider issues that "present[] only abstract questions of law that do not rest upon existing facts or rights." See *Ryan v Ryan*, 260 Mich App 315, 330; 677 NW2d 899 (2004) (quotation omitted).

Affirmed. Defendants, being the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens