## WEISS v FORD MOTOR COMPANY

1. CIVIL RIGHTS—DISCRIMINATION—LABOR RELATIONS—CIVIL ACTION—
   CIVIL RIGHTS COMMISSION.

   A plaintiff's civil damage action in court for redress of a statuto-
   rily created civil right to be free from discrimination in private
   employment is not barred by a disposition of a complaint by
   the plaintiff before the Michigan Civil Rights Commission.

2. CIVIL RIGHTS—RACIAL DISCRIMINATION—JUDICIAL REMEDY—CONSTI-
   TUTIONAL LAW.

   The access of an aggrieved individual to a judicial remedy should
   be both cumulative and alternative in the context of racial
   discrimination (Const 1963, art I, § 2, art V, § 29).

3. TRIAL—DIRECTED VERDICT—APPEAL AND ERROR.

   The facts are reviewed in the light most favorable to plaintiff
   when reviewing a trial court's refusal to grant a defendant's
   motion for a directed verdict or judgment *non obstante vere-
   dicto;* if, when so viewed, there is any evidence which is
   competent and sufficient to support the jury's determination,
   the determination should not be disturbed.

4. CIVIL RIGHTS—RACIAL DISCRIMINATION—LABOR RELATIONS—JOB
   TRANSFER—JURY QUESTION.

   In a damage action arising out of an employee's job transfer
   because of racial discrimination, the question of the employer's
   motive was properly presented to the jury where the evidence
   was sufficient for reasonable men to differ.

5. EVIDENCE—RELEVANCY—MOTIVES—SURROUNDING CIRCUMSTANCES.

   Where the motive of a person for doing an act out of the ordinary
   course of events is a legitimate subject of inquiry, under the

REFERENCES FOR POINTS IN HEADNOTES
[1] 15 Am Jur 2d, Civil Rights §§ 58–62.
[2] 15 Am Jur 2d, Civil Rights §§ 68, 69.
[3] 30 Am Jur 2d, Evidence § 1086.
[4] 48 Am Jur 2d, Labor and Labor Relations § 607.
[5] 29 Am Jur 2d, Evidence § 266.
[6] 29 Am Jur 2d, Evidence §§ 249, 251–257, 267.

issue, all the surrounding circumstances and influences that might have contributed to or caused such motive may be inquired into.

6. EVIDENCE—RELEVANCE—TRIAL—APPEAL AND ERROR.

A trial court's determinations of relevancy of evidence will be reversed only for a clear abuse of discretion.

Appeal from Wayne, James Montante, J. Submitted June 4, 1975, at Detroit. (Docket No. 21180.) Decided September 23, 1975. Leave to appeal granted, 395 Mich 826.

Complaint by Richard Weiss against Ford Motor Company for damages arising out of a job transfer, and consequent lay-off, based upon racial considerations. Judgment for plaintiff. Defendant appeals. Affirmed.

*Philo, Maki, Cockrel, Robb, Spearman & Cooper* (by *Nicholas J. Rine),* for plaintiff.

*Robert W. Scott, James R. Jackson, Richard S. Molloy* and *T. L. Axam,* for defendant.

Before: DANHOF, P. J., and R. B. BURNS and R. M. MAHER, JJ.

R. B. BURNS, J. Defendant appeals from a Wayne County Circuit Court jury verdict of $50,000 in favor of plaintiff. We affirm.

Plaintiff's action results from the circumstances of his employment at defendant's Rouge Complex Frame Plant. Plaintiff, a white man, began working as a welder in department 5266 of the plant on October 23, 1970. His seniority dated from 1966, and, excepting two years of Army service, he had been continuously employed with defendant until the events precipitating this action.

On December 10, 1970, an altercation developed between plaintiff and his foreman over the quality

of plaintiff's work. The foreman escorted him to the Labor Relations Office where Mr. Perczak, a Ford labor representative, and Mr. Walter Rosser, a union representative, were present. The foreman stated that he wanted plaintiff "disqualified", and left without saying why. Plaintiff admitted to Perczak that he had "gotten a little hot under the collar", explaining that he was being treated at the VA Hospital for periodic bouts of nervous anger derived from his harrowing experiences in Vietnam.

Perczak referred plaintiff to Ford's medical department, where he was examined by a Dr. Harris who recommended that plaintiff's physical and emotional problems were such that he be "remove[d] from arc welding and place[d] in major assembly". Perczak and Rosser discussed the situation, with Rosser suggesting that plaintiff be assigned to less strenuous work in departments 5262 or 5264. On December 14, 1970, plaintiff was transferred to 5264. On January 1, 1971, plaintiff began a four- to six-week stay in the hospital, suffering from glomerulonephritis, a degenerative kidney disease. He returned to work in mid-February and was placed under a medical restriction prohibiting heavy lifting or excessive bending.

During his employment in 5264, plaintiff decided to run for the union office of building guide and became a candidate therefor on the slate of the Democratic Action Team, a caucus headed by Walter Rosser. This slate was made up of all black candidates with the exception of plaintiff and one other man. It was opposed by an all-black Frame Plant Aggressive slate headed by Mr. Grady Glenn, UAW Local 600 Unit Chairman. Over 90 per cent of the employees of the plant were black.

Rosser and Glenn discussed plaintiff's transfer to

5264 two times during the campaign. Glenn accused Rosser and Perczak of giving plaintiff preferential treatment in that transfer, and stated, as testified to at trial, that he, Glenn, "would have that God-damned honky transferred back to 5266 if it was the last thing that he did". Pursuant to this promise, Glenn approached Mr. Harold Ball, Ford's Labor Relations Supervisor for the plant's hourly personnel, and registered a complaint. He claimed that plaintiff's transfer was motivated by racial considerations and was an attempt to defeat him (Glenn) in his bid for reelection as unit chairman. He also claimed that the transfer failed to comply with union contracted nonpromotional bid procedure. No grievance by any worker had ever been filed regarding plaintiff's job assignment.

In the latter part of April, Mr. Ball transferred plaintiff back to 5266 without informing him of the reason for this transfer. It was apparently immediately subsequent to this retransfer that a campaign leaflet authored by Grady Glenn appeared in the shop. This leaflet, introduced in evidence as plaintiff's exhibit 8, reads in relevant part:

"Let's take Walter Rosser, a candidate for president and present bargaining committeeman. Brother Walter, who politicked throughout unit negotiations, saw fit to have an employee transferred to Department 5264 from 5266 because of 'nervousness.' This employee just happened to be a 'white' employee. This employee just happens to be running for building guide on Walter Rosser's slate, presumably to pull the white vote. We have had brothers in department 5266 with worse problems than nervousness. Why couldn't any of them come out."

Shortly after his retransfer to 5266, plaintiff was assigned to work on the carousel, a job involving

the type of lifting and bending that he was prohibited from doing. He was then laid off for inability to perform assigned duties. While on lay-off he survived the primary election but was defeated in the run-off election in late May, 1971.

On April 26, 1971, plaintiff filed a grievance challenging his retransfer and subsequent lay-off. On May 6, 1971, plaintiff filed a complaint with the Michigan Civil Rights Commission (CRC) alleging racial discrimination. On August 9, 1971, plaintiff's grievance was settled in his favor. He was reinstated with partial payment of lost wages in the amount of $934. Mr. Ball testified that the grievance was settled because he had not been aware of plaintiff's physical restriction at the time of retransfer, and because there were at that time employees in 5264 with less seniority than plaintiff.

On October 23, 1971, plaintiff filed suit in Wayne County Circuit Court alleging racial discrimination in employment based on the same incident. On December 21, 1971, the CRC issued a notice of disposition of plaintiff's complaint, responding to the August reinstatement as a "satisfactory resolution" of the matter. The CRC terminated its investigatory process without determining the question of racial discrimination.

On August 17, 1973, Ford made a pretrial motion for summary judgment on the ground that the disposition of plaintiff's CRC complaint barred the circuit court action. This motion was denied. After the jury verdict in favor of plaintiff, defendant filed alternative motions for judgment notwithstanding the verdict and for a new trial. These motions were denied. Defendant appeals asking that the trial court judgment be vacated and entered for defendant, or that a new trial be granted.

Defendant's contention that this action is barred by the CRC "disposition" is largely without merit. The language of *Pompey v General Motors Corp,* 385 Mich 537, 560; 189 NW2d 243, 255 (1971), is clear:

"We hold that plaintiff can maintain a civil damage action for redress of his statutorily created civil right to be free from discrimination in private employment, and that this remedy may be pursued in addition to the remedial machinery provided by statute."

The Supreme Court intended *Pompey* to be read broadly for the general proposition that a "plaintiff may avail himself of a cumulative judicial remedy in vindication of this specific civil right". 385 Mich at 551. Thus was the CRC found not to have exclusive jurisdiction over claims of racial discrimination. The same concern for cumulative remedies is inherent in *Michigan Civil Rights Commission v Clark,* 390 Mich 717; 212 NW2d 912 (1973), where the Court struck down a statute enabling a respondent to divest a complainant of his access to CRC jurisdiction by providing for preemptive removal to the courts.

Similar in thrust is the recent opinion of the United States Supreme Court in *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974). The Court held that an arbitration decision pursuant to a collective bargaining agreement did not operate as a bar to an action for racial discrimination in employment brought under Title VII.[1] In so holding the Court noticed a long-standing legislative intent "to accord parallel or overlapping remedies against discrimination". 415 US at 47. Significantly, *Alexander* was brought following a complaint by that plaintiff

---

[1] Civil Rights Act of 1964; 42 USCA 2000e *et seq.*

before the Colorado Civil Rights Commission which was referred to the Equal Employment Opportunity Commission and dismissed for lack of cause.

The provision of the 1963 Constitution establishing the CRC, article V, § 29, states that "[n]othing contained in this section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state". Article I, § 2 expresses the paramount policy of the state against racial discrimination. The above cases indicate that in this most important context the access of an aggrieved individual to a judicial remedy should be both cumulative and alternative.

Further, it is of factual significance in this case that the "disposition" of the CRC did not include anything resembling an actual adjudication of the discrimination charge. This disposition can best be seen as a mere recognition of the August reinstatement, and scarcely the "final determination" to which defendant alludes. The trial court was correct in denying the motions brought on this ground.

Defendant next contends that its motions for judgment notwithstanding the verdict or for a new trial should have been granted for failure by plaintiff to establish a prima facie case. The appropriate standard for review is stated in *Anderson v Gene Deming Motor Sales, Inc,* 371 Mich 223, 229; 123 NW2d 768, 771 (1963):

"It is a well-settled principle that on review of a trial court's refusal to grant a motion for a directed verdict or judgment *non obstante veredicto,* the facts are reviewed in the light most favorable to plaintiff."

And, "[i]f, when so viewed, there is any evidence

which was competent and sufficient to support the jury's determination, said determination should not be disturbed". *Taft v J L Hudson Co,* 37 Mich App 692, 698; 195 NW2d 296, 299 (1972).

Defendant introduced evidence to show that plaintiff was retransferred for failure to comply with a nonpromotional bid procedure. Plaintiff introduced evidence in support of his contention that the retransfer was a product of racial consciousness deriving from the charges of Mr. Glenn. Harold Ball gave testimony at trial indicating that he was aware when retransferring plaintiff of the racial aspect of the election and of plaintiff's role therein. Evidence was also adduced to indicate various instances in which transfers in and out of 5264 were effected without particular consideration of seniority, and to show that there were black employees in 5264 at the time with less seniority than plaintiff. It is noted that defendant itself chose to transfer plaintiff to 5264 on medical grounds, and that no fellow employee had complained about this situation.

In short, plaintiff and defendant advanced two competing theories as to Ford's motivation in the retransfer. Plaintiff's circumstantial evidence is just as competent as direct evidence. "When viewed in the light most favorable to plaintiff", the body of the evidence is sufficient for reasonable men to differ, and the question was properly presented to the jury. No error.

Defendant further ascribes two evidentiary rulings by the trial court as reversible error; specifically, admission over objections of Glenn's "Goddamned honky" statement and of the campaign circular constituting plaintiff's exhibit 8.

Defendant contends that exhibit 8 is "irrelevant, prejudicial, and inflammatory", maintaining that

the language of the circular shows that it was distributed after plaintiff's retransfer, and thus, while probative of the state of mind of Grady Glenn, it could not shed light upon the motives of Ford, *i.e.,* Harold Ball. While there is no firm evidence that Ball read this document prior to the retransfer, he did testify at trial that he had seen union literature and that Glenn had raised the issue of racial discrimination in demanding the retransfer. The circular is evidence that Glenn's charges were racial in nature, and it is evidence as to the atmosphere in which Ford was motivated to make the retransfer. In *White v Bailey,* 10 Mich 155, 156 (1862), the Court stated:

"Where the motive of a person for doing an act out of the ordinary course of events is a legitimate subject of inquiry, under the issue, all the surrounding circumstances and influences that might have contributed to or caused such motive may be inquired into."

It is settled that a trial court's determinations of relevancy will only be reversed for a clear abuse of discretion. *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974), *Wilhelm v Detroit Edison Co,* 56 Mich App 116; 224 NW2d 289 (1974). No clear abuse has been shown here. Defendant's claim as to the "prejudicial and inflammatory" nature of this document is supported only by the additional reference to irrelevancy. Defendant has failed to convince that the circular is irrelevant.

Defendant also considers Glenn's "God-damned honky" statement to Rosser to be irrelevant on largely the same ground, noting that Ford and not Rosser had responsibility for the retransfer. Again, the statement is evidence as to the motivation of Glenn in seeking the retransfer, and plaintiff's theory of the case is built upon Ford's awareness

of and acquiescence in this motivation. We cannot find an abuse of discretion in the trial court's admission of this statement for the consideration of the jury. That jury has made its determination.

The judgment is affirmed.