CRYDERMAN v SOO LINE RAILROAD COMPANY

1. TRIAL—JURY INSTRUCTIONS—OBJECTIONS—APPEAL AND ERROR.

A failure to object to jury instructions on the lower court level generally precludes appellate consideration of the allegedly erroneous instructions.

2. TRIAL—JURY INSTRUCTIONS—THEORY OF THE CASE.

Each party in a trial is entitled to have his theory of the case explained to the jury except where there is no evidence to support such theory of the case or the theories take or assume as established those facts which the parties, by their proofs, have placed in controversy.

3. APPEAL AND ERROR—JURY INSTRUCTIONS—THEORY OF CASE—CORRECTION OF ERRORS—COURT RULES.

The Court of Appeals should reverse the lower court where it finds that the instructions on a party's theory of the case were incorrectly given to the jury only where the Court finds a violation of the tests set forth in the court rule regarding limitations on corrections of error (GCR 1963, 529.1).

4. APPEAL AND ERROR—JUDGMENT—NOTWITHSTANDING THE VERDICT —STANDARD FOR REVIEW—TRIER OF FACT.

The standard for review of a lower court determination to deny a motion for judgment notwithstanding the verdict is whether, after viewing the facts and all legitimate inferences therefrom in the light most favorable to the party opposing the motion, reasonable men could differ; if they can, the question is one for the trier of fact.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[2, 3] 75 Am Jur 2d, Trial §§ 643, 654.
[4] 4 Am Jur 2d, Appeal and Error §§ 112, 113.
[5] 31 Am Jur 2d, Expert and Opinion Evidence § 22.
[6–8] 5 Am Jur 2d, Appeal and Error § 836.
 58 Am Jur 2d, New Trial §§ 150–157.
[9–11] 39 Am Jur 2d, Highways, Streets, and Bridges § 337 *et seq.*
[12] 61 Am Jur 2d, Pleading § 309.
[13] 75 Am Jur 2d, Trial § 500.

5. Witnesses—Expert Witnesses—Opinion Evidence—Issues of Fact—Legal Conclusions.

A properly qualified expert witness may express an opinion which is otherwise admissible but embraces the ultimate issue of fact; he may not, however, give an opinion embracing legal conclusions.

6. Appeal and Error—Jury Verdict—Setting Aside Verdict—Excessive Verdicts.

Jury verdicts will be set aside by appellate courts as excessive only in rare instances; the challenging party must prove at least one of the following to support a request for a new trial based on excessive verdict: (1) that the lower court abused its discretion in denying a new trial since the jury verdict was based on prejudice, caprice, passion, partiality, sympathy or kindred reasons, and the verdict was not the result of a consideration of the evidence, or (2) that the verdict as rendered is "shocking" to the judicial conscience.

7. Appeal and Error—New Trials—Excessive Verdicts—Abuse of Discretion.

A trial court's denial of a motion for a new trial based on an excessive verdict is an abuse of discretion where the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

8. Appeal and Error—Jury Verdicts—Excessive Verdicts—Judicial Conscience.

Appellate courts should not reduce a jury verdict as excessive based on a contention that the verdict as rendered is shocking to the judicial conscience where the amount awarded is within the range of the evidence and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering.

9. Highways—Railroads—Visual Obstructions—Clear Vision Areas—Statutes.

The statutes which provide a procedure for the elimination of visual obstructions through the entry and implementation of "clear vision area" agreements between railroad companies and public highway authorities having jurisdiction and control over roads intersected by railroad tracks do not impose a mandatory obligation on the part of railroad and public highway authori-

· ties to enter into such agreements (MCLA 469.6, 469.7; MSA 22.766, 22.767).

10. HIGHWAYS—ROAD COMMISSIONS—STATUTORY DUTIES—CLEAR VISION AREAS—IMPROVED PORTION OF HIGHWAY—STATUTES.

The statutory duty imposed upon a road commission to provide and maintain highways reasonably safe and fit for travel extends to clear vision areas which lie beyond the improved portions of the highway proper (MCLA 469.6, 469.7, 691.1402; MSA 22.766, 22.767, 3.996[102]).

11. HIGHWAYS—ROAD COMMISSIONS—STATUTORY DUTIES—RAILROADS —HIGHWAY CROSSINGS—PUBLIC SERVICE COMMISSION—TRAFFIC CONTROL DEVICES—STATUTES.

A road commission has a duty to provide and maintain highways reasonably safe and fit for public travel and to install and maintain traffic control devices; the statutes regarding railroad highway crossings which concern new grade crossings, the improvement of existing grade crossings, and flashing light protection do not impose a mandatory obligation on the road commission to affirmatively seek the Public Service Commission's permission to install or erect additional protective devices, but rather, provide the road commission with alternative procedures through which it may fulfill its general duty of reasonable prudence pursuant to the statute regarding the safety and fitness of highways for travel (MCLA 469.2, 469.8, 691.1402; MSA 22.762, 22.768, 3.996[102]).

12. PLEADING—AMENDING PLEADINGS—APPEAL AND ERROR—DISCRETION—UNFAIR PREJUDICE—COURT RULES—STATUTES.

The granting or refusal of permission to amend pleadings rests in the sound discretion of the trial judge and should not be disturbed on appeal absent an abuse of discretion; the appellate courts of this state have consistently held in evaluating the extent of this discretion that leave should be granted unless unfair prejudice to the opposing party would result (MCLA 600.2301; MSA 27A.2301, GCR 1963, 118.1).

13. MOTIONS—DIRECTED VERDICTS—MEANING OF EVIDENCE.

A motion for a directed verdict is properly denied when considering the facts in the light most favorable to the adverse party reasonable men could differ as to the meaning of the evidence.

Appeal from Chippewa, William F. Hood, J. Submitted June 6, 1977, at Grand Rapids. (Docket Nos. 28671, 28672.) Decided September 20, 1977. Leave to appeal denied, 402 Mich —.

Complaints by Forrest H. Cryderman, administrator of the estates of Mary L. Cryderman, Forrest H. Patrick Cryderman and Sherri N. Cryderman, deceased, Michael E. Darling, administrator of the estates of Deann R. Darling, Tracy M. Darling and Charlotte Darling, deceased, and Frank J. Sauro, administrator of the estate of Carol Sauro, deceased, against the Soo Line Railroad Company and Chippewa County Road Commission seeking damages for wrongful deaths resulting from a car-train accident. Judgments for plaintiffs. Defendants appeal. Affirmed.

*Kelman, Loria, Downing, Schneider & Simpson,* and *Thomas G. Moher,* for plaintiffs.

*Lindquist & Vennum* (by *Edward M. Glennon* and *J. Kevin Costley)* and *Humphrey & Murphy,* for defendant Soo Line Railroad Company.

*Dilley, Dewey & Waddell* (by *Jonathan S. Damon* and *A. Newton Dilley),* for defendant Chippewa County Road Commission.

Amicus Curiae: County Road Association of Michigan by *Hillman, Baxter & Hammond* (by *William S. Farr* and *Michael D. Wade)* and *L. W. McEntee.*

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and M. B. BREIGHNER,* JJ.

### Facts

M. B. BREIGHNER, J. Defendants appeal seven lower court judgments based upon jury awards granting plaintiffs aggregate money damages in excess of $1,250,000.

This wrongful death action arises out of a car-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

train accident at the Fibre Crossing in Chippewa County which claimed the lives of eight persons. The accident occurred at the place where Highway 40 intersects the Soo Line Railroad Company's railroad track.

The trial court deducted $1000 for funeral expenses from each verdict pursuant to MCLA 500.3107; MSA 24.13107 and thereafter entered individual judgments for the plaintiffs as determined by the jury.

Events producing this litigation occurred on July 30, 1974. On that date, at approximately 11:50 a.m., a northbound 1972 Oldsmobile stationwagon, driven by Sandra Chamberlain, and occupied by four children and three adults, collided with an eastbound Soo Line freight train at the Fibre Crossing. All eight occupants of the motor vehicle died as a result of injuries received in this accident.

## Soo Line Railroad Company

### I

The railroad first contends reversible error occurred in the court's instructions to the jury. We disagree.

During its summation of plaintiffs' theory, the court informed the jury they could consider, as evidence of the railroad's negligence, whether or not:

(a) The train whistle was properly sounded;

(b) The train was adequately equipped with an audible whistle;

(c) The train was being operated at an excessive speed;

(d) The train engineer failed to maintain a careful observation of his surroundings as he approached the crossing;

(e) Defendant should have petitioned the Public Service Commission for permission to erect additional crossing protections; and

(f) Defendant should have entered into a "clear vision area agreement" with the Chippewa County Road Commission.

The railroad asserts these instructions ought not to have been given, even as a statement of plaintiffs' theory, since these claims find no support in the record.

The railroad failed to timely interpose an objection to the instructions here challenged. The rule is well established that failure to object on the lower court level generally precludes appellate consideration. *Moskalik v Dunn,* 392 Mich 583; 221 NW2d 313 (1974), *Hunt v Deming,* 375 Mich 581; 134 NW2d 662 (1965), *National Pharmaceutical Services, Inc v Harrison Community Hospital,* 67 Mich App 286; 241 NW2d 76 (1976), *Williams v The Detroit Edison Co,* 63 Mich App 559; 234 NW2d 702 (1975).

In explaining the purpose for that rule, the *Moskalik* Court stated:

"The requirement of a timely objection is not an arbitrary one. Its purpose is to avoid improper instruction and, if perchance an improper instruction which can be corrected has been given, to facilitate its correction before verdict, thereby avoiding costly new trials." 392 Mich at 592; 221 NW2d at 316.

As already noted, the criticized instructions were given as a statement of plaintiffs' theory of their case. We now consider applicable standards applying to the railroad's substantive claim.

Each party is entitled to have his theory of the case, if supported by evidence, explained to the jury. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 562. Such instructions, however, should not be given where there is (1) no evidence to support them, or (2) where such instructions take or assume as established "those facts which the parties, by their proofs, have placed in controversy". *Hansen v Batchelder,* 14 Mich App 627, 633; 165 NW2d 886, 889 (1968).

If this Court finds theory instructions were incorrectly given, by application of the foregoing criteria, and instructional error occurred, inquiry then focuses upon the nature of the error, harmful or harmless. With respect to this inquiry, reversal need only be pronounced if this Court finds a violation of the tests set forth in GCR 1963, 529.1.

We believe there was evidence in the record to support the theory instructions as given. We do not find even harmless error. As already noted, no timely objection was registered.

## II

The railroad also asserts the court reversibly erred when it refused to grant defendant's motion for judgment notwithstanding the verdict. We disagree.

The standard for review of such a lower court determination is defined in *Weiss v Ford Motor Co,* 64 Mich App 519, 525; 236 NW2d 124, 127–128 (1975). That standard is whether, after viewing the facts and all legitimate inferences therefrom in the light most favorable to the party opposing the motion, reasonable men could differ. If they can, the question is one for the trier of fact.

As a matter of law, the railroad contends the

negligence of Sandra Chamberlain, the driver of the car, was the sole proximate cause of plaintiffs' damages. It is the railroad's position that Mrs. Chamberlain's negligent conduct superseded and cut off any causation that might have existed between the railroad's negligence and injury to plaintiffs.

Applying the standard described in *Weiss, supra,* if reasonable minds can differ on the conduct of Mrs. Chamberlain, as contributing to plaintiffs' injuries, the lower court determination must be upheld. Our examination of the record convinces us that a fact issue existed for the jury's determination as to such conduct.

In reviewing this claim of error, we have considered *Caldwell v Fox,* 394 Mich 401, 422; 231 NW2d 46, 56 (1975), *Davis v Thornton,* 384 Mich 138; 180 NW2d 11 (1970), *Comstock v General Motors Corp,* 358 Mich 163; 99 NW2d 627 (1959), *Gleason v Hanafin,* 308 Mich 31, 38; 13 NW2d 196, 199 (1944), *Johnson v Grand Trunk W R Co,* 58 Mich App 708; 228 NW2d 795 (1975), *Kubasinski v Johnson,* 46 Mich App 287, 288; 208 NW2d 74, 75 (1973).

## III

Next, it is the railroad's contention that the trial court erred in permitting an expert to express an opinion on ultimate factual issues. This claim is without merit.

Over vehement objection, a traffic safety specialist was permitted to testify that the railroad crossing should have been equipped with flashing lights, and that the Public Service Commission should have been petitioned for authority to erect flashing signals. The expert expressed the opinion

that a reasonably prudent railroad would have taken such action.

A properly qualified expert may express an opinion which is otherwise admissible but embraces the ultimate issue of fact. *In re Powers Estate*, 375 Mich 150; 134 NW2d 148 (1965), *Dudek v Popp*, 373 Mich 300; 129 NW2d 393 (1964), *Cook v Kendrick*, 16 Mich App 48; 167 NW2d 483 (1969), *LaFave v Kroger Co*, 5 Mich App 446; 146 NW2d 850 (1966), GCR 1963, 605.

We find no error in the trial court's admission of the criticized opinion testimony.

## IV

Lastly, the railroad asserts an abuse of discretion by the trial court in denying a motion for new trial, based on the claim of excessive verdict. We disagree.

It is well established that jury verdicts will be set aside by appellate courts as excessive only in rare instances. *Pippen v Denison Division of Abex Corp*, 66 Mich App 664; 239 NW2d 704 (1976).

In order to support a request for a new trial, based on excessive verdict, proof of the challenging party is required as to at least one of the following:

(1) That the lower court abused its discretion in denying a new trial since the jury verdict was based on prejudice, caprice, passion, partiality, sympathy or kindred reasons. The verdict was not the result of a consideration of the evidence.

(2) Or, that the verdict as rendered is "shocking" to the judicial conscience.

To prevail under the first criterion, it is necessary to show a trial court abuse of discretion. An abuse of discretion exists when the result is so

palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. *Spalding v Spalding,* 355 Mich 382, 384–385; 94 NW2d 810, 812 (1959).

Such abuse must be demonstrated by a showing that the verdict resulted from prejudice, caprice, passion, partiality, sympathy or kindred reasons.

In searching the record, we have applied these standards. The record does not support a contention that the trial court abused its discretion in the context here required.

Under the second criterion, appellate courts will reduce jury verdicts according to the following standard:

"As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside." *Pippen v Denison Division of Abex Corp,* 66 Mich App 664, 675; 239 NW2d 704, 709 (1976).

The verdicts rendered here do not shock our judicial conscience.

The following decisions have been considered by the Court in connection with this claim. *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971), *Stevens v Edward C Levy Co,* 376 Mich 1; 135 NW2d 414 (1965), *Carreras v Honeggers & Co, Inc,* 68 Mich App 716; 244 NW2d 10 (1976), *Dooms v Stewart Bolling & Co,* 68 Mich App 5; 241 NW2d 738 (1976), *Isom v Farrugia,* 63 Mich App 351; 234 NW2d 520 (1975).

*Chippewa County Road Commission*

I

The trial court instructed the jury it could consider the road commission's failure to enter into a "clear vision area" agreement with the railroad as constituting a breach of duty owed plaintiffs. The road commission contends it could not, as a matter of law, be found negligent by virtue of its failure to enter such an agreement. This instruction was given in discussing plaintiffs' theory. It was subject to a timely road commission objection.

We hold the instruction was properly given.

MCLA 469.6; MSA 22.766 and MCLA 469.7; MSA 22.767 provide a procedure for the elimination of visual obstructions through the entry and implementation of "clear vision area" agreements between railroad companies and public highway authorities having jurisdiction and control over roads intersected by railroad tracks. Within that statutory framework, parties entering such agreements are empowered to purchase and remove visual obstructions which lie within clear vision areas. The purpose is to make railroad crossings safer. The procedure authorized by statute does not impose a mandatory obligation on the part of railroad and public highway authorities to enter such agreements.

The road commission's duty, with respect to Highway 40, is derived from MCLA 691.1402; MSA 3.996(102), which in pertinent part, provides as follows:

> "Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or

damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. * * * The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel."

The core issue is whether the duty, imposed upon the road commission to provide and maintain highways "reasonably safe and fit for travel", extends to clear vision areas which lie beyond the improved portions of the highway proper.

We think so, under the authority of the following cases: *Van Liere v State Highway Department,* 59 Mich App 133; 229 NW2d 369 (1975), *Detroit Bank & Trust Co v Department of State Highways,* 55 Mich App 131; 222 NW2d 59 (1974), *Miller v Oakland County Road Commission,* 43 Mich App 215; 204 NW2d 141 (1972), *Johnson v Michigan,* 32 Mich App 37; 188 NW2d 33 (1971), *Lynes v St Joseph County Road Commission,* 29 Mich App 51; 185 NW2d 111 (1970).

The reasoning of *Lynes, supra,* at 59; 185 NW2d at 114–115, is applicable here:

"The argument presented by the defendant, and accepted by the trial court as the basis for granting the defendant a summary judgment, that [MCLA 691.1402; MSA 3.996(102)] exempts the defendant from liability in the instant case because the stop sign is not part of the 'improved portion of the highway designed for vehicular travel' is not persuasive. Under defendant's interpretation of the statute, the duty of the defendant to keep the highways safe and fit for travel would be limited to

the pavement itself and whatever equipment physically touches the pavement. Although this interpretation would provide a certain ease in the application of the statute, it would completely negate the first part of the statute, as well as that part of [MCLA 224.21; MSA 9.121], both of which impose the duty on the defendant to keep the highways safe and fit for travel. We cannot accept the argument that the legislature intended such a result. It is recognized law that in construing a statute effect must be given to every part of it and one part must not be so construed as to render another part nugatory. * * *

"Traffic signals which control the flow of traffic are an integral part of the improved portion of the highway. The presence or absence of such signals, as well as the conditions in which they are maintained, directly relates to the statutory duty imposed upon the defendant to maintain the highway in a condition safe and fit for travel."

## II

The road commission also attacks trial court instructions dealing with the duty of the road commission to reduce the speed limit on Highway 40, and a duty to erect and maintain such signs and signals or warning devices as are necessary to enable a motorist to use the highway in reasonable safety.

A careful review of the court's instructions, complained of by the road commission, convinces us no reversible error occurred as to the instruction dealing with the speed limit reduction. The road commission's reliance on MCLA 257.628; MSA 9.2328 is misplaced. At most, MCLA 257.628; MSA 9.2328 merely affects the procedure the road commission must utilize to fulfill its statutory duty of reasonable prudence. We note also no objection was registered to the instruction at issue.

The road commission has a duty to provide and

maintain highways reasonably safe and fit for public travel. The installation and maintenance of traffic control devices are included within the scope of that duty. *Lynes v St Joseph County Road Commission,* 29 Mich App 51, 58; 185 NW2d 111, 114 (1970).

MCLA 469.2; MSA 22.762 and MCLA 469.8; MSA 22.768 impose no mandatory obligation on the road commission to affirmatively seek the Public Service Commission's permission to install or erect additional protective devices. These statutes do provide the road commission with alternative procedures through which it may fulfill its general duty of reasonable prudence pursuant to MCLA 691.1402; MSA 3.996(102). Viewed in this light, defendant's arguments regarding the legal ramifications of MCLA 469.2; MSA 22.762 and MCLA 469.8; MSA 22.768 have no merit.

The road commission contends that even if its statutory duty of reasonable care was breached because of failure to petition the Public Service Commission, it can not be held liable in view of the prohibitions contained in MCLA 257.615; MSA 9.2315. In the analogous context of a railroad's common-law duty to provide and maintain reasonably safe grade crossings, this Court has consistently rejected a similar argument. *Johnson v Grand Trunk W R Co,* 58 Mich App 708; 228 NW2d 795 (1975), *Masters v Grand Trunk W R Co,* 13 Mich App 80; 163 NW2d 661 (1968), *People v Grand Trunk W R Co,* 3 Mich App 242; 142 NW2d 54 (1966).

III

The road commission next contends the trial court reversibly abused its discretion, when at the conclusion of plaintiffs' opening statement, it

granted plaintiffs' motion to amend pleadings. We disagree.

GCR 1963, 118.1, and its statutory counterpart, MCLA 600.2301; MSA 27A.2301, provide that the granting or refusal of permission to amend pleadings rests in the sound discretion of the trial judge. On appeal, this ruling will not be disturbed in the absence of abuse of discretion. *Michigan Mutual Liability Insurance Co v Fruehauf Corp,* 63 Mich App 109, 113; 234 NW2d 424, 426-427 (1975).

In evaluating the extent of the discretion conferred by Rule 118, this Court in *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 71 Mich App 177, 189; 247 NW2d 589, 595 (1976), stated as follows:

"The court rules provide that leave shall be freely given when justice so requires. GCR 1963, 118.1. While rulings on such motions are entrusted to the discretion of the trial courts, the appellate courts of this state have consistently held that leave should be granted unless unfair prejudice to the opposing party would result."

An examination of the record here convinces us that no prejudice resulted from the court's exercise of its discretion.

IV

As did the railroad, the road commission attacks the trial court's decision to allow plaintiffs' expert to express an opinion. It is contended that the opinion as offered was posited in the language of a legal conclusion. This goes beyond the authority of GCR 1963, 605.

We do not find reversible error here.

As stated in *Cook v Kendrick,* 16 Mich App 48;

167 NW2d 483 (1969), a properly qualified expert may give an opinion otherwise admissible that embraces the ultimate issue of fact. He may not give an opinion embracing legal conclusions.

The opinion expressed does approach the expression of a legal definition or standard. We conclude, however, the error, if any, was not sufficiently harmful to warrant reversal. The reasoning of the Court in *Campbell v Menze Construction Co,* 15 Mich App 407; 166 NW2d 624 (1968), is particularly applicable.[1]

The last claim of error is directed at the trial court's denial of a motion for a directed verdict. The road commission's claim challenges the legal sufficiency of the evidence presented. It must be viewed in the context of the review standard applicable when appellate courts review a denial of a directed verdict motion. In defining that standard, this Court in *Birou v Thompson-Brown Co,* 67 Mich App 502, 509; 241 NW2d 265, 269 (1976), stated:

"When a trial court's refusal to grant a motion for directed verdict * * * is reviewed, the facts are considered in the light most favorable to the adverse party. If reasonable men could differ as to the meaning of the evidence, then a directed verdict should be denied."

We believe sufficient evidence existed to create a jury question as to the road commission's negligence. Viewed in the light most favorable to plaintiffs, if believed, the evidence revealed the road commission, notwithstanding the fact it knew the

---

[1] This claim of the road commission differs from the railroad's claim, discussed earlier, in that the railroad does not claim the expert opinion to be a statement of legal conclusion. If we consider the railroad's claim in the light of *In re Powers Estate,* 375 Mich 150; 134 NW2d 148 (1965), we believe the error, if any, is harmless. *Campbell v Menze Construction Co,* 15 Mich App 407; 166 NW2d 624 (1968).

dangerous nature of the Fibre Crossing, made no efforts to eliminate the problem through various alternative means suggested by plaintiffs.

Affirmed, costs to plaintiffs.