ANDERSON v MACOMB COUNTY ROAD COMMISSION

Docket No. 76699. Submitted April 3, 1985, at Detroit.—Decided June 19, 1985. Leave to appeal applied for.

Plaintiff, Sherry Anderson, was injured when the automobile in which she was riding left the roadway, jumped a curb, and struck a utility pole which was located two feet beyond the curb. Plaintiff brought an action for damages against the Macomb County Road Commission, the City of Roseville, The Detroit Edison Company, and Michigan Bell Telephone Company, alleging negligence in the placement and maintenance of the utility pole. Michigan Bell was dismissed as it did not own the pole, and the other defendants were granted summary judgments, Macomb Circuit Court, Raymond R. Cashen, J. Plaintiff appealed from the judgments in favor of Roseville and the county road commission as of right and sought leave to appeal the judgment in favor of Detroit Edison. The City of Roseville's motion to dismiss was granted and leave was denied by the Court of Appeals as to the Detroit Edison judgment. The issue on appeal is whether the utility pole in question was within the "improved portion of the highway" so as to be within the ambit of the statute by which the state and its subdivisions have waived governmental immunity and may be held liable for negligent maintenance of the highways in their jurisdictions. *Held:*

A utility pole which is unrelated to the design of the highway system and serves no purpose in attaining the goal of safe traffic flow and which is located outside the traveled portion of the highway, two feet beyond the curb, is not within the improved portion of the highway designed for vehicular travel for purposes of the statutory waiver of governmental immunity. Therefore, summary judgment in favor of the county road commission on the basis of governmental immunity was proper. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Statutes § 142 *et seq.*

[2] Am Jur 2d, Highways, Streets, and Bridges §§ 103 et seq., 1703 *et seq.*

Liability, in motor vehicle-related cases, of governmental entity for injury, death, or property damage resulting from defect or obstruction in shoulder of street or highway. 19 ALR4th 532.

1. STATUTES — JUDICIAL CONSTRUCTION — STATUTES IN DEROGATION OF COMMON LAW.

A statute which is in derogation of the common law must be strictly construed.

2. HIGHWAYS — GOVERNMENTAL IMMUNITY — UTILITY POLES — IMPROVED PORTION OF HIGHWAY.

A utility pole located two feet away from a roadside curb is not within the improved portion of the highway designed for vehicular travel and thus a county road commission is immune from liability for the alleged negligent placement and maintenance of the pole; a pole so located does not come within the ambit of the statutory highway exclusion to governmental immunity (MCL 691.1402; MSA 3.996[102]).

*John J. Gretch & Assoc., P.C.* (by *Michael R. Osaer*), for plaintiff.

*Peterson & Hay, P.C.* (by *William L. Hay*), for the Macomb County Road Commission.

Before: BRONSON, P.J., and J. H. GILLIS and ALLEN, JJ.

PER CURIAM. Plaintiff brought this action in the circuit court against the Macomb County Road Commission, the City of Roseville, Detroit Edison Company, and Michigan Bell Telephone Company for negligence in the placement and maintenance of a utility pole with which a car plaintiff was riding in collided. Michigan Bell was dismissed when it was determined that it did not own the utility pole. The remaining defendants brought separate motions for summary judgment, which were granted by the trial court. Plaintiff appealed as of right from the orders granting summary judgment to the City of Roseville and the Macomb County Road Commission. A motion to dismiss brought by the City of Roseville was granted by this Court on December 6, 1984. Plaintiff also sought leave to appeal from the order granting

summary judgment to Detroit Edison, but leave was denied pursuant to an order dated September 28, 1984. Thus, only the propriety of the order granting summary judgment to the Macomb County Road Commission is presented for our consideration.

The facts are not in dispute. On July 10, 1981, plaintiff was a passenger in a vehicle driven by Lamont Convery. While driving north on Utica Road in the City of Roseville, Convery lost control of his vehicle. The automobile skipped a curb and struck a utility pole located 24 inches from the curb. As a result of the accident, plaintiff was permanently paralyzed below her neck.

The sole question presented through this appeal is whether the statute by which the state waived its sovereign immunity and allowed itself to be sued extends to utility poles located two feet from the roadside curb. The relevant statute reads in pertinent part as follows:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. * * * The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel." MCL 691.1402; MSA 3.996(102).

As noted by this Court in cases too numerous to list, the ambiguity inherent in this statute con-

cerns the meaning of the modifier "improved" as it relates to the phrase "portion of the highway designed for vehicular travel". Despite the generally expansive meaning given the term by many decisions of this Court, we find none which would require the conclusion that the state or its subdivisions must maintain in reasonable repair a utility pole located two feet from the roadside curb. In so concluding, we rely both upon our analysis of the cases construing the phrase "improved portion of the highway" and upon the rule that a statute which is in derogation of the common law, such as MCL 691.1402; MSA 3.996(102), must be strictly construed. *Tibor v Dep't of State Highways,* 126 Mich App 159, 162; 337 NW2d 44 (1983).

We begin by acknowledging the observation of the Court in *Detroit Bank & Trust Co v Dep't of State Highways,* 55 Mich App 131; 222 NW2d 59 (1974), that "[a] highway is the composite of many components: slabs of poured concrete, shoulders, usually of gravel, markings, traffic control signals, speed control signs." 55 Mich App 134. Among the first cases to recognize that MCL 691.1402 was intended to include more than simply the paved portion of the highway was *Johnson v Michigan,* 32 Mich App 37; 188 NW2d 33 (1971). The *Johnson* Court held that the plaintiff could sue the state for injuries received when plaintiff lost control of her vehicle while attempting to return to the paved portion of the road from a shoulder which was six inches lower than the road. The Court based its conclusion on the fact that, although not of the same character as the paved portions of a highway, the shoulder is also designed for vehicular traffic. 32 Mich App 39.

In *Bennett v City of Lansing,* 52 Mich App 289; 217 NW2d 54 (1974), a malfunctioning traffic light was held to be part of the "improved portion" of

the highway. In so concluding, the *Bennett* Court relied upon the observation from *Lynes v St Joseph County Road Comm,* 29 Mich App 51, 59; 185 NW2d 111 (1970), that "[t]raffic signals which control the flow of traffic are an integral part of the improved portion of the highway". In *Cryderman v Soo Line R Co,* 78 Mich App 465; 260 NW2d 135 (1977), the Court found that the duty to maintain highways reasonably safe and fit to travel extended to "clear vision areas which lie beyond the improved portions of the highway proper". 78 Mich App 476.

In *Salvati v Dep't of State Highways,* 415 Mich 708; 330 NW2d 64 (1982), the Supreme Court found traffic signs to be included as an aspect of the improved portion of the highway, with the following observation:

"A traffic sign, once erected, becomes an integral part of the physical structure of the highway, and thus the duty to maintain a highway in reasonable repair encompasses the maintenance of traffic signs. A governing unit may incur liability under the broad concept of 'traffic sign maintenance' in the following ways: for failing to properly maintain a sign placed on the roadway, *O'Hare v Detroit,* 362 Mich 19; 106 NW2d 538 (1960); for failing to erect any sign or warning device at a point of hazard, *Bonneville v Alpena,* 158 Mich 279; 122 NW 618 (1909); *Mullins v Wayne County,* 16 Mich App 365; 168 NW2d 246 (1969); for positioning an improper system of signs on the roadway, *National Bank of Detroit v Dep't of State Highways,* 51 Mich App 415; 215 NW2d 599 (1974); or for placing a sign which inadequately informs approaching motorists of a hazard, *Lynes v St Joseph County Road Comm,* 29 Mich App 51; 185 NW2d 111 (1970)." 415 Mich 715 (Footnote omitted.)

A line of cases which is more factually analogous to the case before us are those involving

guardrails. In *Detroit Bank & Trust Co v Dep't of State Highways, supra,* the Court found that the guardrail constructed on the median between a divided highway was an aspect of the "improved portion" of the highway. The Court noted that "[t]he median did not magically appear between the paved portions of the divided highway" but, rather, was created by the state and the guardrail in the middle was manufactured to the highway department's specifications and installed by their contractors. 55 Mich App 134. *Detroit Bank & Trust* was relied upon by the Court in *Van Liere v State Highway Dep't,* 59 Mich App 133; 229 NW2d 369 (1975), where a gust of wind blew a car from the highway into a guardrail which was adjacent to the shoulder of the road. 59 Mich App 135. In *Hall v Dep't of State Highways,* 109 Mich App 592; 311 NW2d 813 (1981), the plaintiff fell asleep at the wheel, causing his vehicle to enter the median, where it struck a guardrail on the opposite side of the median. The Court found MCL 691.1402 to be applicable on the grounds that "guardrails" were included within the statute's ambit.

We cannot agree with the plaintiff's assertion that the foregoing case law compels the application of § 1702 to the facts of this case. In *Johnson v Michigan, supra,* the result flowed from the conclusion that the shoulder of a road is a "portion of the highway designed for vehicular travel". 32 Mich App 39. Plaintiff here cannot reasonably assert that the area two feet from a roadside curb was designed for traffic. The malfunctioning traffic signal cases are consistent with § 1702 since few aspects of the highway system are more essential to safe travel. Traffic signals truly are "an integral part of the improved portion of the highway". *Lynes, supra,* p 59. In contrast, a utility pole plays no part in the highway system, improved portion

or otherwise. Rather, such poles are often located adjacent to roads for the sake of convenience. Regarding the traffic sign line of cases, it is interesting to note that none of the cases listed in *Salvati v Dep't of State Highways, supra,* involved a situation where the vehicle struck a sign which was alleged to have been placed too close to the curb. Such a case would obviously have a significant impact on the outcome of the case before us. Rather, each case turned upon some aspect of the message the sign was intended to convey to drivers. For example, *Salvati* itself involved an allegation by the plaintiff that two "WATCH FOR ICE ON BRIDGE" signs were inadequate to warn of the danger posed to motorists. 415 Mich 712.

The line of cases involving guardrails is also distinguishable. The sole purpose for the existence of a guardrail is to improve safety by ensuring that vehicles do not leave the road at points where danger will be encountered, such as where the road passes over a river. Guardrails thus "relate to the safe flow of traffic" and the appropriate government agency should be held responsible for proper design, placement, and maintenance. *Tibor v Dep't of State Highways, supra,* p 163. Utility poles, on the other hand, are entirely unrelated to the design of the highway system and serve no appointed purpose in attaining the goal of safe traffic flow. As set out above, the same cannot be said of traffic signs, road shoulders, traffic signals, and guardrails. We do not mean to close our eyes to the reality that the placement of this pole near a roadway most likely played a role in enhancing the plaintiff's injuries. Nonetheless, the fact remains that the state has waived its sovereign immunity only with regard to the improved portion of the highway; installations outside the improved portion designed for vehicular traffic were

explicitly excluded by § 1702. We conclude that the utility pole involved in this case was such an installation.[1] The order of the trial court granting the Macomb County Road Commission's motion for summary judgment is therefore affirmed.

Affirmed.

---

[1] Although not relied upon by plaintiff, this Court's opinion in *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984), should be distinguished since its facts, at first glance, appear analogous to this case. The accident in *McKee* occurred when the driver swerved onto the shoulder of the I-94 expressway in order to avoid a disabled vehicle which had come to rest in the center and left-hand lanes. The vehicle then struck a lighting standard which was located off the shoulder of the expressway. The standard penetrated the car and severely injured the driver's two children. The testimony at trial supported the conclusion that the shoulder was of an inadequate width, and that the light pole actually encroached on the narrow shoulder. *Mckee* at 719. The case is therefore distinguishable since the light standard encroached an aspect of the road which was "designed for vehicular travel * * *". *Johnson v Michigan,* 32 Mich App 37; 188 NW2d 33 (1971). Here, encroachment was not an issue. Rather, the utility pole was a full two feet from the roadside curb. On this basis, the two can be distinguished and the results thereby harmonized.